2022 IL App (1st) 210558

FIRST DISTRICT
SIXTH DIVISION
May 20, 2022

No. 1-21-0558

| | | |
|---|---|---|
| FIREBIRDS INTERNATIONAL, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2020 CH 05360 |
| | ) | |
| ZURICH AMERICAN INSURANCE | ) | |
| COMPANY, | ) | Honorable |
| | ) | Michael T. Mullen, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Justices Mikva and Oden Johnson concurred with the judgment and opinion.

## OPINION

¶ 1 Plaintiff, Firebirds International, LLC (Firebirds), appeals the trial court's dismissal of its breach of contract complaint against defendant, Zurich American Insurance Company (Zurich) pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2018)). On appeal, Firebirds contends (1) the trial court erred in finding that the contamination exclusion in Zurich's policy applied to loss or damage caused by the COVID-19 pandemic and (2) the trial court erroneously denied Firebirds an opportunity to amend its complaint. For the following reasons, we affirm.

¶ 2                              I. JURISDICTION

¶ 3 The trial court dismissed Firebirds' complaint with prejudice on April 19, 2021. Firebirds filed a notice of appeal on May 14, 2021. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017), governing appeals from final judgments entered below.

¶ 4                                    II. BACKGROUND

¶ 5       The following facts are substantially taken from the trial court's memorandum opinion and order. Firebirds owns more than 50 wood fired grill restaurants in 19 states. On January 21, 2020, the United States reported its first case of COVID-19. The parties acknowledge that COVID-19 is caused by the novel SARS-CoV-2 virus (hereinafter referred to as "COVID-19 virus").

¶ 6       In order to curb the spread of COVID-19, the government in each of those 19 states issued orders prohibiting restaurants from offering dine-in service. Firebirds' restaurants also incurred additional expenses to clean, sanitize, repair, alter, and modify the premises in order to keep their employees and patrons safe. Measures taken included professional-grade deep cleaning, installation of plexiglass dividers and hands-free sanitizing stations, and removal of tables and chairs in order to maintain six feet of separation between customers. Firebirds alleged that the actual presence of the virus in its restaurants caused property loss or damage. Also, as a result of the pandemic, Firebirds' restaurants have had their "gross revenues destroyed."

¶ 7       At the time, Firebirds possessed two identical, all-risk commercial property insurance policies issued by Zurich. These policies insured "against direct physical loss of or damage caused by a Covered Cause of Loss to Covered Property, *** subject to the terms, conditions and exclusions stated in "the policies."[1]

¶ 8       Firebirds submitted a claim under the policies, seeking coverage for the significant losses incurred by their restaurants. Zurich, however, denied Firebirds' claim because the COVID-19 did

---

[1]Since the two policies at issue are identical, we will refer to the terms in Zurich's EDGE policy number ERP 0191571-03, with an effective policy period of March 30, 2019, to March 30, 2020. The other policy had an effective policy period of March 30, 2020, to March 30, 2021.

not constitute a "direct physical loss or damage to property." Zurich also denied coverage based on the contamination exclusion contained in the policies.

¶ 9    Firebirds thereafter filed a six-count, amended complaint alleging breach of contract. In the complaint, Firebird alleged that the "actual presence" of the virus constituted physical loss or damage. The first three counts alleged (1) Zurich breached the policies' time element provision, where "COVID-19 caused direct physical loss and damage to Firebirds' insured properties," thus necessitating the suspension of operations at the restaurants; (2) Zurich breached the civil authority provision where government orders in response to COVID-19 restricted Firebirds' access to its properties; and (3) Zurich breached the protection and preservation provision where Firebirds incurred costs and suffered gross earnings losses to protect its property in the presence of COVID-19. In counts IV, V, and VI, Firebirds sought a declaratory judgment on each of the claims that the losses it sustained due to the COVID-19 pandemic are covered under the Zurich policies.

¶ 10    Zurich filed a section 2-615 motion to dismiss the complaint. Zurich argued that "[i]t is plain from the face of Firebirds' complaint that it seeks coverage exclusively for losses that resulted from the presence of the COVID-19 virus, and Firebirds' claims fall squarely within the Policies' Contamination Exclusion." The exclusion states:

> "This policy excludes the following unless it results from direct physical loss or damage not excluded by this Policy.
>
> Contamination, and any cost due to Contamination including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy, except as provided by the Radioactive Contamination Coverage of this Policy."

The policy defines "contamination" as:

"Contamination (Contaminated)—Any condition of property due to the actual presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, Fungus, mold or mildew."

¶ 11 The trial court found the contamination exclusion to be clear and unambiguous. The provision excludes coverage for contamination, defined as "[a]ny condition of property due to the actual presence of any *** virus." The court concluded that under the plain terms of the provision, "any loss caused by a virus and any cost attributed to a virus are excluded from coverage." The parties do not contest that COVID-19 is caused by a virus. The court considered Firebirds' arguments, but it found that "[t]he factual scenario in this case is the exact type anticipated by the exclusion. The applicability of the exclusion is free from doubt." It granted Zurich's motion to dismiss with prejudice, and Firebirds filed this appeal.

¶ 12                                    III. ANALYSIS

¶ 13 The sole issue in this appeal is whether the trial court properly dismissed Firebirds' complaint based on the contamination exclusion in Zurich's policies. A section 2-615 motion to dismiss challenges the legal sufficiency of a complaint based on defects apparent on its face. *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 364 (2004). In reviewing the sufficiency of a complaint, we take as true all well-pleaded facts and all reasonable inferences drawn from those facts. *Ferguson v. City of Chicago*, 213 Ill. 2d 94, 96-97 (2004). A section 2-615 motion to dismiss should not be granted unless it is clear that no set of facts can be proved that would entitle the plaintiff to recovery. *Canel v. Topinka*, 212 Ill. 2d 311, 318 (2004). We review the trial court's order granting a section 2-615 motion *de novo*. *Wakulich v. Mraz*, 203 Ill. 2d 223, 228 (2003).

¶ 14    In their amended complaint, Firebirds alleged that the actual presence of COVID-19 in their properties constituted physical loss or damage. The complaint further alleged that the presence of COVID-19 rendered their properties unusable and unsafe for operation as restaurants. Firebirds contends that Zurich's policies provided coverage for such property damage and business interruption losses, and the trial court erred in dismissing the complaint.

¶ 15    The policies at issue are two all-risk commercial property insurance policies. " 'Generally, an "all risk" insurance policy creates a special type of coverage extending to risks not usually covered under other insurance, *** unless the policy contains a specific provision expressly excluding the loss from coverage.' " *Board of Education of Maine Township High School Dist. 207 v. International Insurance Co.*, 292 Ill. App. 3d 14, 17 (1997) (quoting *Sentinel Management Co. v. New Hampshire Insurance Co.*, 563 N.W.2d 296, 299 (Minn. Ct. App. 1997)). In dismissing Firebirds' complaint, the trial court determined that Zurich's policies explicitly excluded damage or loss resulting from contamination, which is defined as "[a]ny condition of property due to the actual presence of *** [a] virus."

¶ 16    Firebirds argues, however, that attached to the policies are 31 separate amendatory endorsements, each with a different state named in its title. The first page of each endorsement states: "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY." Of interest here is the "Amendatory Endorsement—Louisiana." This endorsement deleted the "contamination" definition in the policy and replaced it with "Contamination (Contaminated)— Any condition of property due to the actual presence of any Contaminants." The endorsement defined "Contaminant" as: "[a]ny solid, liquid, gaseous, thermal or other irritant, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals, waste (including materials to be

- 5 -

recycled, reconditioned or reclaimed), other hazardous substances, Fungus or Spores." The Louisiana endorsement therefore removed "virus" from the definition of "contamination." Firebirds argues that the Louisiana endorsement amended Zurich's policies so that contamination due to a virus is no longer explicitly excluded from coverage. Alternatively, Firebirds argues that the contamination exclusion is at least ambiguous in light of the Louisiana endorsement and thus must be construed against Zurich.

¶ 17 Our resolution of this issue requires interpretation of provisions in the policies. The rules applicable to contract interpretation also govern our construction of an insurance policy. *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 433 (2010). Our primary objective is to ascertain and give effect to the parties' intent as expressed in the agreement. *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005). If the policy terms are clear and unambiguous, they will be enforced as written unless doing so would violate public policy. *Id.* " '[T]he court must construe the policy in its entirety, giving effect to all parts of the policy as is possible, including endorsements.' " *Pekin Insurance Co. v. Recurrent Training Center, Inc.*, 409 Ill. App. 3d 114, 120 (2011) (quoting *Central Illinois Public Service Co. v. Allianz Underwriters Insurance Co.*, 240 Ill. App. 3d 598, 602 (1992)). To determine the parties' intent based upon the language used, we construe the policy as a whole, considering the type of insurance for which the parties have contracted, as well as the subject matter insured and the purposes of the policy. *Old Second National Bank v. Indiana Insurance Co.*, 2015 IL App (1st) 140265, ¶ 19. The construction of an insurance policy's provisions is a question of law, which we review *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 108 (1992).

¶ 18 Where an ambiguity exists, courts strictly construe the policy against the insurer that

drafted it and liberally construe it in favor of the insured. *Pekin Insurance Co. v. CSR Roofing Contractors, Inc.*, 2015 IL App (1st) 142473, ¶ 26. "This rule of construction, however, does not justify construing a contract against an insurer when no real ambiguity exists." *Western Casualty & Surety Co. v. Brochu*, 105 Ill. 2d 486, 495 (1985). Under Illinois law, an ambiguity exists where "the policy language is subject to more than one reasonable interpretation." *Hobbs*, 214 Ill. 2d at 17. We emphasize, however, that "[a]lthough 'creative possibilities' may be suggested, only reasonable interpretations will be considered." *Id.* (quoting *Bruder v. Country Mutual Insurance Co.*, 156 Ill. 2d 179, 193 (1993)). We will not find a provision ambiguous merely because the parties disagree on its meaning. *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153 (2004).

¶ 19    With these tenets of contract interpretation in mind, we find that the amendatory endorsements of Zurich's policies, including the Louisiana endorsement, are not ambiguous. Each endorsement identifies a particular state in its title. To simply ignore the state name in the title runs counter to the requirement that we interpret an insurance policy in such a way that none of its terms are rendered meaningless or superfluous. *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 466 (2010). As such, the only reasonable interpretation of the endorsements is that they apply to the risks insured in the named state.[2]

¶ 20    Although this intent could have been expressed more clearly, that fact alone does not make the provision ambiguous. Rather, an ambiguity exists only when "the policy language is

_____

[2]We also find that section 6.20 of the policies supports our interpretation that the titles provide relevant information regarding the amendatory endorsements. Section 6.20 provides that "[t]he titles of the various paragraphs and endorsements are solely for reference and shall not in any way affect the provisions to which they relate." "Reference" is defined as "an act of referring," and to "refer" means to "direct to a source of *** information." The American Heritage Dictionary 1168 (4th Coll. ed. 2004).

susceptible to more than one reasonable interpretation." *Munoz*, 237 Ill. 2d at 433. A contrary interpretation that gives no effect to the state named in the endorsement would mean that all attached endorsements applied equally to the policies. As Zurich points out, considering all 31 endorsements as applicable to the policy would result in "many terms that would conflict with each other." Also, a number of the endorsements refer to specific laws in the named state. It would be illogical to apply a provision referring to a particular state law in a different state. Such an interpretation is therefore not a reasonable one.

¶ 21    Firebirds argues that *Novant Health Inc. v. American Guarantee & Liability Insurance Co.*, No. 1:21-CV-309, 2021 WL 4340006 (M.D.N.C. Sept. 23, 2021), compels a different result. The district court in *Novant*, construing North Carolina contract law, denied a motion to dismiss the plaintiff's covid-based claim pursuant to an insurance policy that contained a contamination exclusion and a Louisiana amendatory endorsement substantially similar to the ones found in Zurich's policy. *Id.* at *5. While federal courts' interpretation of state law can be persuasive, we are not bound by it. See *City of Chicago v. Groffman*, 68 Ill. 2d 112, 118 (1977) (noting "[t]he general rule is that decisions of United States district and circuit courts are not binding upon Illinois courts"). Instead, we choose to conduct our own review of the policy language, applying established Illinois contract interpretation law as set forth above.

¶ 22    Nonetheless, *Novant* is distinguishable. *Novant* held that the insurer failed to meet its burden where the policy contained no language limiting all amendatory endorsements to claims in those states, and the insurer did not adequately explain why it would otherwise "include[ ] 74 pages of irrelevant and immaterial words in Novant's policy, for no reason apparent on the record." *Novant*, 2021 WL 4340006, at *5. Here, as Zurich points out, there was a reason for attaching the

endorsements to the policies. Zurich's policies covered not only property maintained by the insured when the policies took effect, they also covered property "Newly Acquired" during the policy period. Specifically, they provided that Zurich "will pay for direct physical loss of or damage caused by a Covered Cause of Loss to property (of the type insurable under this Policy), at any Location purchased, leased or rented by the Insured *after* the inception date of this Policy." (Emphasis added.)

¶ 23    When they purchased their policies, Firebirds maintained property in 19 states, some of which are named in the amendatory endorsements.[3] Firebirds' restaurants are not confined to a particular region, and they could have acquired property anywhere in the United States during the policy period. If Firebirds had done so, and if the state where the property is located had an amendatory endorsement, Zurich's policies would have provided coverage for that property as amended by the endorsement. Unlike *Novant*, the parties here had legitimate reasons, connected to the purpose of the policies, to attach the 31 state-specific amendatory endorsements.

¶ 24    Firebirds argues, however, that Zurich could have included limiting language in the Louisiana endorsement as it did with some of the other endorsements. They point out that Zurich subsequently amended the endorsement to read that it "only applies to locations in Louisiana" and argue that, by its actions, Zurich acknowledged the ambiguity of the original endorsement.

¶ 25    It is well-established that courts cannot consider extrinsic evidence when interpreting a facially unambiguous insurance policy. *Vivify Construction, LLC v. Nautilus Insurance Co.*, 2017 IL App (1st) 170192, ¶ 20. We also disagree that Zurich's subsequent actions indicate ambiguity.

---

[3]Firebirds' restaurants are in Alabama, Arizona, Delaware, Florida, Georgia, Indiana, Iowa, Kansas, Maryland, Missouri, Nebraska, New Jersey, North Carolina, Ohio, Oklahoma, Pennsylvania, South Carolina, Tennessee, and Virginia.

The fact that Zurich amended the Louisiana endorsement to make the parties' intent clearer does not mean the original language was ambiguous. As we have found, the plain language of the policies, read as a whole, supports only one reasonable interpretation given the policies' purpose and the subject matter insured: that the amendatory endorsements applied only to the insured's properties, presently owned or newly acquired, in the named state. Courts must not strain to find an ambiguity where none exists. *Hobbs*, 214 Ill. 2d at 17.

¶ 26    Accordingly, we find that the Louisiana endorsement applies only to amend coverage of risks located in Louisiana. Firebirds acknowledges it has no properties in Louisiana, so the contamination exclusion contained in the original policy remains in effect for their claims. Firebirds' complaint alleged loss and damage incurred "as a result of the novel SARS-CoV-2 (COVID-19) outbreak." Zurich's policies, however, explicitly exclude from coverage losses or damages due to contamination, defined as "[a]ny condition of property due to the actual presence of [a] *** virus." We find, as did the trial court, that "[t]he applicability of the exclusion is free from doubt."

¶ 27    Firebirds argues that even if the original contamination exclusion is in effect, it does not apply to their claim for business income losses. They contend that the plain language of the exclusion applies only to costs incurred due to contaminated property, such as rents paid when they were unable to occupy a location or expenditures for deep-cleaning and installation of hands-free sanitary stations and plexiglass. Firebirds points to the following language as support:

"This policy excludes the following unless it results from direct physical loss or damage not excluded by this Policy.

Contamination, and any cost due to Contamination including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy, except as provided by the Radioactive Contamination Coverage of this Policy."

According to Firebirds, the lack of any reference to business losses means that only costs due to contamination are excluded.

¶ 28 Firebirds' interpretation, however, dismisses the first two words of the sentence. The provision does not merely state that the policy excludes "any cost due to Contamination." Rather, the policy excludes "Contamination, *and* any cost due to Contamination." (Emphasis added.) The conjunctive "and" means "[t]ogether with; in addition to; as well as." The American Heritage Dictionary 52 (4th Coll. ed. 2004). Read with the definition inserted for the word, the provision excludes from coverage "Contamination, [*together with, in addition to, as well as*] any cost due to Contamination." Furthermore, insertion of a comma after the first word "Contamination," indicates that "Contamination" itself is considered an independent exclusion not subject to qualification by any succeeding phrases. See *City of Chicago v. Alexander*, 2017 IL 120350, ¶¶ 54-55 (finding that the placement of a comma after each listed right in the 1970 Illinois constitution reflected the legislature's intent to recognize four independent rights).[4]

¶ 29 Firebirds' complaint alleged business interruption losses due to the presence of the COVID-19 virus in their properties. The policies, however, explicitly exclude "Contamination," defined as "[a]ny condition of property due to the actual presence of any *** virus," from coverage.

_____

[4]We recognize that a case cited by Firebirds, *Thor Equities, LLC v. Factory Mutual Insurance Co.*, 531 F. Supp. 3d 802 (S.D.N.Y. 2021), did find the provision to be ambiguous as to business losses. However, the court acknowledged that reading the provision as only pertaining to costs would render the first part of the sentence, the "contamination, and" part, meaningless. *Id.* at 808. We are not bound by the decisions of that court and choose not to follow *Thor*'s interpretation.

Pursuant to the plain language of the policies, the COVID-19 virus is not a covered cause of loss. It follows that business interruption due to the COVID-19 virus, as alleged by Firebirds in their complaint, is not a suspension caused by a covered cause of loss.

¶ 30    We do not find *Cinemark Holdings, Inc. v. Factory Mutual Insurance Co.*, 500 F. Supp. 3d 565 (E.D. Tex. 2021), a case cited by Firebirds, persuasive. There, the plaintiff sought coverage under the defendant's policy alleging that the COVID-19 virus was actually present in the air and actually damaged its properties. *Id.* at 569. The court held that the plaintiff met its burden to defeat the motion to dismiss, and Firebirds points to a footnote in the court's order showing that the defendant's policy contained a contamination exclusion substantially similar to the one here. See *id.* at 567 n.3, 569. The court's holding, however, was based on the plaintiff's allegation that its properties were actually damaged by the presence of COVID-19 in the air, and the fact that Factory Mutual Insurance Company's policy provided coverage for loss and damage caused by a communicable disease. *Id.* at 569. From our reading of the order, the court did not base its ruling on the contamination exclusion.

¶ 31    As Firebirds concedes, Zurich's policies do not contain a provision for loss or damages caused by communicable disease. Firebirds' citation to a California state case is similarly unpersuasive. See *Ross Stores, Inc. v. Zurich American Insurance Co.*, No. RG20-084158, 2021 WL 3700659, at *11 (Cal. Super. July 13, 2021) (finding that the contamination exclusion was ambiguous because the policy also contained a communicable disease provision, and the contamination exclusion when read in isolation "would exclude the coverage that is expressly provided in the" communicable disease provision). Firebirds argues, however, that Zurich's policies contain a provision allowing for decontamination costs, and we should use the same

reasoning in *Ross* to find an ambiguity where the contamination exclusion "nullif[ies] this affirmative grant of coverage."

¶ 32     Unlike *Ross*, where the policy's virus exclusion potentially conflicted with a provision covering communicable diseases, the clear language of the decontamination provision in Zurich's policies does not contradict or conflict with the contamination exclusion. The decontamination provision is part of the "Special Coverages" section and provides:

> "If Covered Property is Contaminated from direct physical loss or damage caused by a Covered Cause of Loss to Covered Property and there is in force at the time of the loss any law or ordinance regulating Contamination due to the actual not suspected presence of Contaminant(s), then this Policy covers, as a direct enforcement of such law or ordinance, the increased cost of decontamination and/or removal of such Contaminated Covered Property in a manner to satisfy such law or ordinance. This Coverage applies only to that part of Covered Property so Contaminated *** as a result of direct physical loss or damage."

¶ 33     The contamination exclusion provides that contamination is excluded "*unless* it results from direct physical loss or damage not excluded by the policy." (Emphasis added.) The decontamination provision expressly allows for a specific type of recovery when "Covered Property is Contaminated from direct physical loss or damage caused by a Covered Cause of Loss to a Covered Property." Since the decontamination provision is entirely consistent with the contamination exclusion, we find no ambiguity in reading together those two provisions. For these reasons, we find that *Cinemark* and *Ross* do not support Firebirds' argument.

¶ 34    We also do not find persuasive *Live Nation Entertainment, Inc. v. Factory Mutual Insurance Co.*, LA CV21-00862, 2022 WL 390712 (C.D. Cal. Feb. 3, 2022), a recent California district court case, which Firebirds asked this court to take judicial notice of in a motion and which we have taken with the case. There, the court focused on the physical damages issue and found a question exists as to whether physical damages caused by COVID-19 was " 'physical damages not excluded by this Policy.' " *Id.* at *7-*8. We have already determined that the plain language of the contamination exclusion precludes recovery of loss or damage due to the COVID-19 virus.

¶ 35    In another attempt to circumvent the contamination exclusion, Firebirds argues that the exclusion references environmental pollutants and the inclusion of "virus" is out of place with the list of other hazards. They cite to numerous out-of-state cases where the court found ambiguity in an exclusion that included "virus" among pollutants traditionally found in an outdoor environmental or industrial context. Firebirds argues that, in grouping "virus" with such pollutants, it is unclear whether Zurich intended for the contamination exclusion to apply to "virus" as a communicable disease.

¶ 36    Again, this court is not bound by the decisions of those courts. More importantly, the facts and policies in those cases are distinguishable. For example, in *Risinger Holdings, LLC v. Sentinel Insurance Co.*, No. 1:20-CV-00176, 2021 WL 4520968, at *8 (E.D. Tex. Sept. 30, 2021), the provision excluded losses caused by " 'fungi, wet rot, dry rot, bacteria or virus.' " Therein, the court noted that the same grouping was found in another part of the policy referring to exclusions involving structural damage or mechanical failure. *Id.* at *9. Furthermore, "virus" was defined in yet another part of the policy as causing corruption of electronic data, like a malicious code. *Id.*

Thus, the word "virus" was found to be ambiguous because it was "susceptible to at least three distinct interpretations." *Id.* at *11.

¶ 37    In Zurich's policies, "virus" is not the outlier in a group of only pollutants and environmental hazards. Rather, the list also includes "pathogen, pathogenic organism, bacteria, *** [and] disease causing or illness causing agent." As the trial court found, the COVID-19 virus can be considered a pathogen or a "disease causing" agent as well as a virus. Also, Firebirds does not point to any other definitions of "virus" in the policies that contradict its definition as a disease-causing or illness-causing agent. In fact, unlike the case in *Risinger*, Zurich's policies contain a separate definition for "Computer Virus" that pertains to the "deletion, destruction, degradation, corruption, malfunction or compromise" of electronic business systems. The policies clearly differentiate between a virus such as the COVID-19 virus and a computer virus. As such, the term "virus" is not ambiguous here as it was found to be in *Risinger*.

¶ 38    As an alternative argument for coverage, Firebirds contends that it was the governmental closure orders, the pandemic, and the general threat of the virus, not the "actual presence" of the virus, as required for the contamination exclusion to apply, that caused its losses. However, losses of this nature are simply not covered by the policies at issue. As Zurich has maintained since its original denial of coverage, and as it reiterated at oral argument, coverage is triggered in the first instance only where there is a "direct physical loss of or damage caused by a Covered Cause of Loss to Covered Property." The requirement that there be some direct physical loss of or damage to property to trigger coverage is the reason that, without relying on any virus exclusion, this court has in several recent decisions found no coverage for losses sustained by businesses during the COVID-19 pandemic. See *Lee v. State Farm Fire & Casualty Co.*, 2022 IL App (1st) 210105,

¶¶ 21-23 (relying on a virus exclusion only as a secondary reason that the declaratory action was properly dismissed); *ABW Development, LLC v. Continental Casualty Co.*, 2022 IL App (1st) 210930, ¶ 36; *Sweet Berry Cafe, Inc. v. Society Insurance, Inc.*, 2022 IL App (2d) 210088, ¶¶ 44-47 (noting that the fact that the policy did not contain a virus exclusion was "of no import" since the policy did not provide coverage). Zurich's motion to cite these decisions as additional authority, which we took with the case, is granted.

¶ 39    The Zurich policies at issue have this same requirement. The policies provide coverage only where there is a "direct physical loss" or "damage *** to Covered Property." This requirement is reiterated in section IV of the policy, which addresses the "Time Element Loss" of an insured due to the necessary suspension of business activities. The policies make it clear that any suspension resulting in such losses must itself be "due to direct physical loss of or damage to Property."

¶ 40    As this court recognized recently in *Lee*, the failure of most insurance policies to cover losses resulting from intangible causes that are not tied to actual physical damage to property is not a new concept. 2022 IL App (1st) 210105, ¶ 19. In *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 312 (2001), our supreme court made clear that "diminution in value of a whole, resulting from the failure of a component to perform as promised, does not constitute a *physical* injury," and thus falls outside of coverage for physical loss of or damage to property. (Emphasis in original.) Zurich's refusal to cover Firebirds' substantial business losses due to the pandemic is in keeping with how our courts have long interpreted similar policy language.

¶ 41    Lastly, Firebirds argues that the trial court erred in dismissing their complaint with prejudice, giving them no opportunity to amend their complaint for a second time. Firebirds did not file a motion to amend its first-amended complaint but instead requested an opportunity to amend during oral argument before the trial court. The court considered Firebirds' request, "even though the request was oral and made without any proposed pleading for the Court to consider." The trial court found that the " 'Contamination' exclusion excludes any coverage for Firebirds' losses." Although the court expressed "great empathy for Firebirds," it concluded that "it is clearly apparent that no set of facts can be proven that would entitle Firebirds to recover under either of the Zurich policies." Therefore, it granted Zurich's motion to dismiss with prejudice. The trial court's denial of a motion to amend a complaint is a matter of discretion and a reviewing court will not reverse that determination absent an abuse of discretion. *In re Estate of Hoover*, 155 Ill. 2d 402, 416 (1993).

¶ 42    In determining whether the trial court abused its discretion, we consider the following factors: (1) whether the proposed amendment will cure the defective pleading, (2) whether the proposed amendment would surprise or prejudice the opposing party, (3) whether the proposed amendment was timely filed, and (4) whether the movant had previous opportunities to amend. *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992). Firebirds, however, did not tender a proposed amendment to the trial court and there is no proposed amendment in the record on appeal. Instead, Firebirds requests additional discovery to resolve the ambiguities in the policies. They argue that "[a]t the conclusion of fact and expert discovery, it is likely that case developments would leave Firebirds in position to amend its complaint."

¶ 43   A party's failure to tender a proposed amended complaint with supporting facts to the trial court significantly diminishes this court's ability to determine whether the proposed amendment would have stated a viable cause of action. *Illinois Non-Profit Risk Management Ass'n v. Human Service Center of Southern Metro-East*, 378 Ill. App. 3d 713, 726 (2008). As a result, failure to tender the proposed amendment forfeits the party's right to review of the trial court's denial of a request for leave to amend. *Kirk v. Michael Reese Hospital & Medical Center*, 117 Ill. 2d 507, 521 (1987); see *Ignarski v. Norbut*, 271 Ill. App. 3d 522, 532-33 (1995) (finding no abuse of discretion in denying leave to amend, where the plaintiff did not submit a proposed complaint but instead requested further discovery and an opportunity "to file an amended complaint based upon facts that may or may not be obtained").

¶ 44                                                     IV. CONCLUSION

¶ 45   In their amended complaint, Firebirds alleged property damage and business losses due to the presence of the COVID-19 virus in its properties. According to the plain language of Zurich's policies, the COVID-19 virus is not a covered cause of loss. Each of the provisions under which Firebirds sought recovery—time element, civil authority, and protection and preservation—requires physical loss or damage caused by a covered cause of loss. We, like the trial court, greatly empathize with Firebirds as they struggle through the COVID-19 pandemic. However, it is clear that no set of facts can be proven that would entitle Firebirds to recover for their claims under the Zurich policies. Therefore, we affirm the trial court's dismissal of Firebirds' complaint and its denial of their motion to amend their complaint.

¶ 46   Affirmed.

No. 1-21-0558

| | |
|---|---|
| **Cite as:** | *Firebirds International, LLC v. Zurich American Insurance Co.*, 2022 IL App (1st) 210558 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2020-CH-05360; the Hon. Michael T. Mullen, Judge, presiding. |
| **Attorneys for Appellant:** | Adam J. Levitt, Amy E. Keller, Daniel R. Ferri, Mark Hamill, and Laura E. Reasons, of DiCello Levitt Gutzler LLC, of Chicago, and Mark Lanier (*pro hac vice*), Alex Brown, and Skip McBride, of Lanier Law Firm PC, and Douglas Daniels (*pro hac vice*), of Daniels & Tredennick, both of Houston, Texas, Kenneth P. Abbarno, Mark A. DiCello, and Mark Abramowitz (*pro hac vice*), of DiCello Levitt Gutzler LLC, of Mentor, Ohio, Timothy W. Burns, of Burns Bowen Bair LLP, of Madison, Wisconsin, and Jeffrey P. Goodman (*pro hac vice*) and Marni S. Berger (*pro hac vice*), of Saltz Mongeluzzi & Bendesky P.C., of Philadelphia, Pennsylvania, for appellant. |
| **Attorneys for Appellee:** | Eileen King Bower and Jared K. Clapper, of Clyde & Co LLP, and Michael A. Scodro, of Mayer Brown LLP, both of Chicago, for appellee. |
| *Amicus Curiae*: | Laura Foggan (*pro hac vice*) and Rachel A. Jankowski, of Crowell & Moring LLP, of Washington D.C., for *amici curiae* American Property Casualty Insurance Association *et al.*<br><br>John H. Mathias Jr., David M. Kroeger, Megan B. Poetzel, Gabriel K. Gillett, and Sara M. Stappert, of Jenner & Block LLP, of Chicago, for *amici curiae* Restaurant Law Center *et al.* |