2025 IL App (1st) 241613-U

FIRST DIVISION
December 22, 2025

No. 1-24-1613

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| FIRSTKEY HOMES, LLC, | ) | Appeal from the Circuit |
| | ) | Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 23 M6 007761 |
| | ) | |
| JUSTIN MAHWIKIZI and LAUREN MAHWIKIZI, | ) | Honorable |
| | ) | George L. Canellis, Jr., |
| Defendants-Appellants. | ) | Judge Presiding. |

_____

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

ORDER

¶ 1 *Held*: We affirm the circuit court's judgment. Defendants fail to demonstrate that the trial court committed any reversible error. Because we find that there are no individual errors identified by defendants, we necessarily find that defendants have failed to demonstrate cumulative error.

¶ 2 This is a residential eviction case brought by the landlord Firstkey Homes, LLC, against the tenants Justin and Lauren Mahwikizi. Following a jury trial, the circuit court entered judgment on the verdict in plaintiff's favor. Plaintiff was awarded possession of the premises, $25,812.42 in unpaid rent, and $816.81 in court costs. Defendants appeal the judgment, raising ten different issues that they claim entitle them to relief on appeal. For the following reasons, we affirm the circuit court's judgment.

¶ 3                                    BACKGROUND

¶ 4      Plaintiff Firstkey Homes, LLC filed a complaint in the circuit court for a residential eviction against defendants Justin Mahwikizi and Lauren Mahwikizi. Plaintiff alleged that it had terminated the lease for nonpayment of rent in the amount of $4,511.16.

¶ 5      Defendants filed their *pro se* appearances in the case and moved for substitution of judge. The motion for substitution was granted, and the case was assigned to Judge George Canellis, Jr. Defendants moved for the substitution of Judge Canellis asserting there was cause for his removal. The case was transferred to Judge Michael B. Barrett for hearing. Following the hearing, Judge Barrett denied the motion for substitution and explained in a written order that defendants "presented no credible evidence to prove prejudice or bias on the part of Judge Canellis. To the contrary, the evidence presented was not credible ***." The case was transferred back to Judge Canellis for further proceedings.

¶ 6      The trial court subsequently entered multiple continuances for defendants to file any counterclaims. Defendants answered the complaint and denied the allegations. They also asserted five affirmative defenses. Defendants filed a "counterclaim" asserting that "[p]laintiff failed to properly serve defendants." The requested relief in the counterclaim was for the court to dismiss the action without prejudice due to the allegedly improper service. Defendants asserted additional counterclaims such as violations of the implied warranty of habitability and constructive eviction. They requested damages allowed by law and punitive damages against plaintiff.

¶ 7      Plaintiff responded with a motion to dismiss the counterclaims. Plaintiff argued in its motion to dismiss that the counterclaims were not germane to this action because plaintiff sought only possession of the premises and the counterclaims filed by defendants seeking money

damages and punitive damages did not contest the issue of possession in any way and could stand independently in a separate action (citing 735 ILCS 5/9-106 (West 2024)). The trial court granted plaintiff's motion to strike the counterclaims.

¶ 8    Defendants moved to dismiss the complaint for improper service of process, failure to timely serve the demand notice, failure to attach a copy of the lease to the complaint, and failure to accept a tendered payment thereby triggering a default. The trial court denied defendants' motion to dismiss.

¶ 9    The court held a pretrial conference. According to the statement of facts submitted by defendants, at the pretrial conference, plaintiff tendered its proposed jury instructions to the trial court. The trial judge asked defendant Justin Mahwikizi if he had received a copy of the jury instructions and if he had any comments about them. Justin responded that, yes, he had received the instructions and "I have no objections to the jury instructions."

¶ 10    Also at the pretrial conference and also according to defendants' statement of facts, the parties and the court discussed the issue of trial witnesses and then Justin brought up another concern. He explained that his wife, Lauren, is also a party to this suit. He informed the court that they have four children and they were unable to secure childcare, so the children would be with them at trial. He explained that their youngest child was two years old, so they may require a couple recesses during trial. The trial judge explained that defendants' young children could not be in court during the trial because it might influence the jury. The trial judge explained that the courthouse has a childcare facility if defendants needed to leave their children there. Justin explained that he planned to have his wife question him on the witness stand and then he would question her.

¶ 11    The trial judge explained that when a party is self-represented, the person usually sits in the witness chair and talks to the jury about the case. Justin asked the court, "could I have another adult interrogate me" if his wife was not present. The trial court explained that it could not permit someone other than an attorney to question him during the trial. The case was continued for the commencement of trial.

¶ 12    No court reporter was present for the jury trial. Following trial, the jury returned a verdict for plaintiff. Judgment was entered on the verdict and plaintiff was awarded possession of the premises, $25,812.42 in unpaid rent, and $816.81 in court costs. Defendants filed this appeal.

¶ 13    Along with filing their notice of appeal, defendants moved the circuit court to stay enforcement of the judgment pending appeal. The circuit court granted, in part, defendants' motion to stay enforcement of the judgment. The circuit court ordered defendants to post bond and pay use and occupancy to plaintiff each month. Defendants filed a motion to stay, vacate, or modify the order granting their stay, arguing that they wished to be permitted to post their bond with a letter of credit. The circuit court granted defendants' motion in part, denying them a stay of the order but permitting them to file the bond in any form accepted by the Clerk of the Circuit Court, including a letter of credit. The circuit court also ordered defendants to make the use and occupancy payments set forth previously. Defendants filed two subsequent motions to modify the stay. Eventually, the Clerk of the Circuit Court allowed defendants to post bond by pledging two certificates of deposit. The trial court ordered the bank to hold the funds pledged by defendants and not disburse the funds until further order of court.

¶ 14    During the proceedings related to the stay, defendants moved for sanctions against plaintiff's attorney for alleged misrepresentations to the trial court and separately moved for sanctions against a witness for alleged perjury. Defendant Justin Mahwikizi sent a letter to the

1-24-1613

Presiding Judge of the Sixth Municipal District raising what he believed to be "significant concerns about the working relationship between the judiciary and the Clerk's Office." He urged the presiding judge to implement enhanced judicial training and improved communication channels between the judiciary and the clerk's office.

¶ 15    While all of the proceedings related to the appellate stay and the posting of the bond were ongoing, defendants were concurrently compiling various bystander's reports. Ultimately, defendant Justin Mahwikizi submitted around 200 pages he typed in the form of a report of proceedings that included his recollection of dialogue between the parties and the court as well as questions asked and answers given by trial witnesses. After some back and forth between the parties and the court, the trial court certified a bystander's report that is included as part of the record on appeal.

¶ 16                                    ANALYSIS

¶ 17    Defendants raise 10 issues on appeal. One, they argue that the trial court abused its discretion when it denied them leave to amend their dismissed counterclaims. Two, they argue that the trial court erred when it struck all of their defenses before trial. Three, they argue that the trial court erred when it only instructed the jury under plaintiff's theory of the case. Four, they argue that the trial court's exclusion of Lauren Mahwikizi from the trial violated her right to due process. Five, they argue that the trial court denied them a fair trial by denying them reasonable accommodations based on their self-represented status. Six, they argue that the trial court's conduct during postjudgment proceedings relating to the bond created the appearance of bias. Seven, they argue that the cumulative effect of all of the above errors denied them due process and a fair trial. Eight, they argue that the trial court erred when ordering alterations to their proposed bystander's report and refusing to certify one of the proposed reports. Nine, they argue

- 5 -

that the trial court failed to comply with the statute governing substitution of judge proceedings when it transferred the case to another judge for the hearing, but not to the presiding judge of the division. Ten, they argue that the trial court erred when it denied them an evidentiary hearing on the issue of service of process.

¶ 18                                    1. Leave to Amend

¶ 19     Defendants argue that the trial court abused its discretion when it denied them leave to amend. Defendants claim that they made both written and oral requests to amend their pleadings after their counterclaims were dismissed. Defendants contend that the effect of denying them leave to amend "was to foreclose defenses and counterclaims before the jury could ever consider them."

¶ 20     Amendments to pleadings may be allowed on just and reasonable terms. 735 ILCS 5/2-616(a) (West 2024). Whether to permit an amendment to a pleading is within the sound discretion of the trial court, and we review an order denying leave to amend for abuse of discretion. *CIMCO Communications, Inc. v. National Fire Insurance Co. of Hartford*, 407 Ill. App. 3d 32, 38 (2011).

¶ 21     The common law record contains no filing in which defendants requested leave to amend following the dismissal. The record citation provided by defendants does not include a request to amend and instead consists of simply the trial court's order striking the counterclaims. In the bystander's report prepared by defendants, they recount the oral ruling made by the trial court striking their counterclaims. There, following the trial court's oral ruling striking the counterclaims, defendants stated, "[i]n that case your honor, we request leave to file our own 2-619 motion to dismiss Plaintiff's complaint."

¶ 22    Defendants disputed what transpired in the trial court when they submitted their proposed bystander's report for certification. However, the trial court declined to certify a version of the bystander's report in which defendants claimed to have requested leave to amend their counterclaims subsequent to their dismissal. Instead, the trial court stated that it would have allowed leave to amend if it was requested, but it had no memory of defendant seeking leave to amend.

¶ 23    The only document in the record that plausibly supports defendants' argument is the response they filed to plaintiff's motion to strike their counterclaims. In the response, defendants argued in the alternative that, if the trial court was inclined to grant the motion to dismiss, they should be permitted to amend their counterclaims. However, after the counterclaims were stricken, defendants took no action to pursue leave to amend. There is no indication that the trial court ever addressed the alternative request for repleading made in defendants' response and defendants failed to secure a ruling on the question or file their own motion seeking leave to replead. Defendants never tendered a proposed amended counterclaim or otherwise sufficiently informed the court what they might plead that could plausibly result in the amendment curing the legal deficiencies found by the trial court in the initial counterclaim. A party's failure to tender a proposed amended pleading with supporting facts to the trial court significantly diminishes this court's ability to determine whether the proposed amendment would have stated a viable cause of action. *Firebirds Int'l, LLC v. Zurich American Insurance Co.*, 2022 IL App (1st) 210558, ¶ 43. As a result, failure to tender the proposed amendment forfeits the party's right to review of the trial court's denial of a request for leave to amend. *Id*. Defendants have failed to show that the trial court abused its discretion with regard to their alleged requests seeking leave to amend.

¶ 24                    2. Striking Defenses Before Trial

¶ 25    Defendants argue that the trial court erred when it struck their defenses before trial. Defendants contend that the trial court's ruling denied defendants the opportunity to present their defenses and had the effect of a directed verdict against them. The common law record contains no order striking defendants' defenses. The record citation provided by defendants for this assertion is the trial court's order striking their counterclaims. The order does not mention affirmative defenses, let alone all defenses. Similarly, plaintiff's motion to dismiss the counterclaims did not mention the affirmative defenses or other defenses, and plaintiff did not move to strike the defenses from defendants' pleading. In the bystander's report prepared by defendants, they recount the oral ruling made by the trial court striking their counterclaims, but again the ruling does not mention affirmative defenses or trial defenses, it refers only to counterclaims. Defendants provide the same set of record citations for their argument concerning counterclaims as for this argument about defenses, but the record does not support defendants' argument in either case.

¶ 26    The trial court, in fact, allowed defendants to file an untimely motion to dismiss plaintiff's complaint under section 2-619 as defendants had long ago answered the complaint and the case was nearing trial. See 735 ILCS 5/2-619(a) (West 2024) (a party may move to dismiss under section 2-619 "within the time for pleading"); *Trzop v. Hudson*, 2015 IL App (1st) 150419, ¶ 64 ("For a motion to be properly brought under section 2-619, the motion [] must be filed ' "within the time for pleading" ' "). Defendants were given the opportunity, and did, assert affirmative defenses in the motion to dismiss as a basis for dismissing the case. The trial court considered defendants' arguments on the merits and ultimately denied the motion to dismiss. In addition, the bystander's report submitted by defendants makes clear that the trial court allowed

them to pursue their theory of the case to the jury. Defendants have failed to show any error with regard to the trial court's alleged striking of their defenses.

¶ 27 The only manner in which defendants were prevented from raising any defenses at trial was under one of plaintiff's motions *in limine*. Plaintiff moved the trial court to prohibit defendants from raising the arguments that were rejected on the merits in defendants' motion to dismiss. The motion *in limine* was granted without objection from defendants. The doctrine of invited error prevents a party who induced the court to make an error or consented to such error from complaining of that error on appeal. *Bruntjen v. Bethalto Pizza, LLC*, 2014 IL App (5th) 120245, ¶ 152. Defendants consented to any error when they failed to object to the motion *in limine*. Defendants similarly did not raise any objection during trial about being prevented from raising any specific defense. See *Barnai v. Wal-Mart Stores, Inc.*, 2021 IL App (1st) 191306, ¶ 59 (the failure to raise an objection at trial forfeits consideration of the issue on appeal); see also *Lewis v. Hull House Association*, 25 Ill. App. 3d 617, 621 (1975) (a party cannot sit by idly at a pretrial conference or trial and then for the first time on appeal make the claim that error was committed). In any event, defendants presented all the defenses during the proceedings that they claim to have been foreclosed from raising. Defendants have failed to show the trial court erred when it allegedly struck their defenses before trial.

¶ 28                                3. Jury Instructions

¶ 29 Defendants argue that the jury instructions were prejudicially one-sided. Defendants point out that Illinois law provides that "a litigant has the right to have the jury clearly and fairly instructed upon each theory which was supported by the evidence." *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 100 (1995). Defendants, however, claim that "the jury was

never permitted to evaluate the Defendants' theory" and instead "received instructions exclusively reflecting the Plaintiff's view, effectively predetermining the outcome."

¶ 30 When the parties in this case appeared at the pretrial conference and jury instruction conference, plaintiff was the only party to tender proposed jury instructions. Defendants did not present proposed instructions or object to those tendered by plaintiff. Instead, according to the bystander's report prepared by defendants, they specifically informed the trial court that they "ha[d] no objections to the jury instructions." Defendants similarly did not raise any issue or any objection at the time to the instructions that were tendered to the jury.

¶ 31 "A party forfeits the right to challenge a jury instruction that was given at trial unless it makes a timely and specific objection to the instruction and tenders an alternative, remedial instruction to the trial court." *Mikolajczyk v. Ford Motor Co.*, 231 Ill. 2d 516, 557 (2008). "These requirements ensure that the trial court has the opportunity to correct a defective instruction and to prevent the challenging party from gaining an unfair advantage by failing to act when the trial court could remedy the faulty instruction." *Id.* Moreover, as with the prior issue, defendants' failure to act before or during trial was the impetus for any error and they cannot complain about it for the first time on appeal. See *Barnai*, 2021 IL App (1st) 191306, ¶ 59 (the failure to raise an objection at trial forfeits consideration of the issue on appeal); see also *Lewis*, 25 Ill. App. 3d at 621 (a party cannot sit by idly at a pretrial conference or trial and then for the first time on appeal make the claim that error was committed). Defendants have failed to demonstrate that they are entitled to any relief on appeal with regard to the jury instructions.

¶ 32                     4. Exclusion of Lauren Mahwikizi From Trial

¶ 33 Defendants claim that the trial court violated defendant Lauren Mahwikizi's right to due process by excluding her from the trial even though she is a party to the case. As defendants

point out, due process requires, at a minimum, notice and a meaningful opportunity to be heard. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). In civil proceedings, the right to be heard encompasses the right of a named party to be present and to participate in their own trial. *In re Marriage of Pagano*, 154 Ill. 2d 174, 187 (1992).

¶ 34    Defendants argue that Lauren Mahwikizi was "excluded from trial on account of childcare limitations." They contend that the trial court did not provide reasonable accommodations for childcare, but instead "barred her participation altogether." Defendants opine that the trial court's ruling "deprived a named defendant of her constitutional right to be heard in her own case." However, the trial court never excluded Lauren Mahwikizi from the proceedings in any way.

¶ 35    At the pretrial conference, defendants for the first time explained that childcare constraints were likely to interfere with the trial. Defendants informed the trial court that they intended to have their children in court with them, including a two-year-old, so they would need some recesses during the jury trial to care for the children.

¶ 36    Defendants themselves filed a jury demand. Plaintiff attempted to have the jury demand stricken but was unsuccessful. At the hearing on their motion to dismiss, the trial court asked defendants what dates would work for trial. Defendant Justin Mahwikizi responded, "we are available the week of the 15th of July for trial conference. July 30th or August 5th for trial." No mention was made of childcare needs at that time. Subsequently, upon learning about the issue, the trial court made efforts to accommodate defendants' childcare needs. The trial court informed defendants that the courthouse had a childcare center that could care for the children during trial. The trial court also informed defendants that having the children in the courtroom would be prejudicial in front of the jury, especially where the jury was charged with deciding whether

evicting defendants from their residence was proper. Then, when the trial commenced, defendants did not object to Lauren Mahwikizi's absence and they proceeded through trial without her being present. See *Webber v. Wight & Co.*, 368 Ill. App. 3d 1007, 1027 (2006) (in order to preserve issue for review, party must both object at trial and in written posttrial motion).

¶ 37     Defendants never argued to the trial court that Lauren was being improperly excluded from the proceedings. Defendants did not request a mere continuance to have the trial held on a different date where they could secure childcare, they demanded that the children be present with them during the jury trial while they represented themselves. Defendants similarly did not request a continuance on the day of trial when Lauren was absent, they simply continued to proceed with the trial without lodging an objection. Failure to request a continuance at that time resulted in a forfeiture of the issue for appeal. See *People v. Robinson*, 157 Ill. 2d 68, 78 (1993) (if a party fails to request a continuance and goes forward with the trial, he cannot request the most drastic measures and then argue on appeal that he is entitled to a new trial). Defendants have not pointed to any specific issue from trial that required Lauren's presence nor have they shown how her absence prejudiced them at trial. Ultimately, defendants have failed to demonstrate that Lauren Mahwikizi was "excluded" from trial, and they failed to preserve any issue for appeal that her absence was the result of a due process violation.

¶ 38                         5. Accommodations for *Pro Se* Litigants

¶ 39     Defendants argue that the trial court refused to provide them with reasonable accommodations because of their *pro se* status in order to fairly present their testimony. Defendants sought to have a non-party, non-attorney pose questions to them on the witness stand so they could proceed in the conventional question and answer format generally used at trial. The trial court denied defendants' request and defendants were required to present their testimony in

the narrative form normally used by self-represented litigants. Defendants, however, contend that the trial court's refusal to let them use a third-person interrogator "effectively denied [them] the opportunity to present their case with the same clarity and structure afforded to represented parties."

¶ 40    Defendants provide no authority for the proposition that they should have been permitted to, as they put it, "have another adult interrogate [them]" during trial. The trial judge explained that when a party is self-represented, the person usually sits in the witness chair and talks to the jury about the case in a narrative form. Indeed, that is the general method of courts receiving testimony from self-represented litigants in Illinois courts. No Illinois courts have found that a *pro se* litigant being required to provide testimony in narrative form is itself sufficient to set aside a jury verdict.

¶ 41    The trial court explained to defendants that it could not permit someone other than an attorney to question them during the trial. The trial court was correct to rule in this manner because a lay person is not entitled to act as an attorney for a party and conduct a trial examination. See *Downtown Disposal Services, Inc. v. City of Chicago*, 2012 IL 112040, ¶ 42 (Karmeier, J., dissenting) (a lay person may appear only in his or her own behalf in an Illinois court (citing *City of Chicago v. Witvoet,* 12 Ill. App. 3d 654, 655 (1973)) and taking actions reserved for an attorney on behalf of another constitutes the unauthorized practice of law (citing *Robb v. Smith,* 4 Ill. 46 (1841))). The trial court was certainly under no obligation to accede to defendants' request and acquiesce to the unauthorized practice of law. Accordingly, defendants have not demonstrated that the trial court failed to provide them with the necessary accommodations to receive a fair trial as self-represented litigants.

¶ 42                            6. Appearance of Bias in Postjudgment Proceedings

¶ 43    Defendants argue that the postjudgment proceedings in this case "departed from ordinary practice in ways that undermined confidence in judicial impartiality." In particular, defendants point to a court appearance where the trial judge summoned the Chief Deputy Clerk of Court to come and testify about certain appeal bond procedures. Defendants contend that the trial judge's act "suggested hostility towards Defendants' position." Further, defendants argue that the trial court denied their motions for sanctions against opposing witnesses and attorneys despite evidence of misconduct. Defendants contend that the trial court "created the appearance that one side was being systematically disadvantaged."

¶ 44    As for the trial judge's alleged bias and his decision to get clarification from the clerk's office on the applicable procedures, defendants cite no adverse ruling. Instead, the trial court granted defendants several extensions of a stay while they attempted to put together the bond. Ultimately, the trial court accepted the bond and defendants were issued a stay of the judgment. Defendants do not ask for any relief directed at the postjudgment proceedings or identify a specific order that should be set aside based on the trial judge's alleged misconduct during postjudgment proceedings. Accordingly, no relief is warranted.

¶ 45    As for the motions for sanctions that were denied, defendants provide no specific argument to explain why the motions should have been granted. Defendants similarly provide no citations to authority to support their arguments that the motions for sanctions were improperly denied. "A point not argued or supported by citation to relevant authority fails to satisfy the requirements of Supreme Court Rule 341(h)(7) (eff. Feb. 6, 2013). [Citation.] Failure to comply with the Rule 341(h)(7)'s requirements results in forfeiture of the issue on appeal. *Vancura v. Katris*, 238 Ill. 2d 352, 369-70 (2010)." *Toushin v. Ruggiero*, 2021 IL App (1st) 192171, ¶ 73.

Instead, they request reversal of the underlying judgment, which is not appropriate relief for this issue.

¶ 46 The motions for sanctions were denied following a hearing that included live testimony from a witness. Defendants do not take issue with the rulings on the merits of those sanctions motions. Defendants have not demonstrated the existence of bias, or even the appearance of bias, and they provide no grounds for setting aside the judgment on the basis of the alleged bias.

¶ 47                                  7. Cumulative Effect of Errors

¶ 48 Defendants argue that "[t]his case was not defined by a single procedural misstep but by a pattern of statutory and judicial irregularities that, taken together, denied [them] a fair trial." However, because we have found that none of the issues raised by defendants constitutes error, we necessarily find no cumulative error. *In re Estate of Mankowski*, 2014 IL App (2d) 140154, ¶ 63.

¶ 49                                  8. Bystander's Report

¶ 50 Defendants argue that the trial court erred when it ordered alterations to their proposed bystander's report. Defendants contend that the trial court manipulated the record which raises questions about judicial inconsistency and favoritism. Defendants suggest that the trial court rewrote their bystander's reports against their protest demonstrating judicial interference in the appellate record.

¶ 51 Plaintiff explains that the bystander's reports drafted by defendant Justin Mahwikizi contained numerous errors. Plaintiff points out that the errors were extensively discussed between the trial judge (using his notes), the plaintiff's attorneys and defendant Justin Mahwikizi, resulting in approved bystander's reports, pursuant to Illinois Supreme Court Rule 323(c) (eff. July 1, 2017). The final bystander's report was approved by the parties and the court.

¶ 52     Defendants were not entitled to have a bystander's report based solely upon their own interpretation of the evidence and memory of what happened during the proceedings, without the acknowledgment of the opposing party and certification by the circuit court. *Camper v. Burnside Construction Co.*, 2013 IL App (1st) 121589, ¶ 55. The trial court here accepted much of what defendants proposed in their bystander's report, but it disputed some of the information provided by defendants and issued corrections. Once certified, the bystander's report is considered to be a true and accurate part of the record on appeal. Ill. S. Ct. R. 323(c), Ill. S. Ct. R. 329 (eff. July 1, 2017); *Herhold v. Herhold*, 123 Ill. App. 2d 293, 296 (1970). The trial court judge is afforded deference based on having been present at the relevant hearings and the direct experience of considering the evidence presented before the court.

¶ 53     Where the proposed report of proceedings does not accurately reflect what occurred before the court during the trial of the case, the trial judge may refuse to certify such a report. *Silverstein v. Grellner*, 15 Ill. App. 3d 695, 697 (1973). Defendants argue that the trial court erred when it ordered modifications to the report and that the court should have entered defendants' version. This argument, however, is at odds with our supreme court rules as the rules require the court to enter a report it believes to be accurate. *Id.* (discussing Illinois Supreme Court Rule 323(c)); see also *Allen v. Lin*, 356 Ill. App. 3d 405, 409-10 (2005). Defendants fail to show that the bystander's report, as certified, is incorrect. As such, we consider the certified bystander's report to be true and accurate (Ill. S. Ct. R. 323(c), Ill. S. Ct. R. 329) and defendants have failed to demonstrate that the trial court erred in conducting the process to assemble and certify the bystander's report.

¶ 54                          9. Substitution of Judge Hearing

¶ 55    Defendants argue that the trial court failed to follow Illinois law governing motions for substitution of judge for cause. In particular, defendants argue that, when the trial judge was presented with the motion for substitution of judge for cause, the judge erred by transferring the case to Judge Michael Barrett for hearing rather than to the presiding judge of the division. Defendants contend that Judge Barrett lacked authority to hear substitution of judge motions.

¶ 56    The statute governing substitutions of judge in Illinois provides that, "[u]pon the filing of a petition for substitution of judge for cause, a hearing to determine whether the cause exists shall be conducted as soon as possible by a judge other than the judge named in the petition." 735 ILCS 5/2-1001(a)(3)(iii) (West 2024). Here, the petition was transferred to another judge for a hearing which was conducted immediately.

¶ 57    The substitution of judge statute does not require the case to be transferred to the presiding judge of the division. Defendants have failed to show that the trial court erred in conducting the substitution of judge proceedings. Moreover, defendants fail to establish or even to argue on appeal that they were entitled to a substitution of judge for cause on the merits. Defendants have failed to show that there was any bias or an appearance of bias in the disposition of their motion for substitution of judge for cause and they have failed to meet their burden to show that the motion should have been granted.

¶ 58    Defendants argue that the prejudice against them was compounded when Judge Barrett declined to approve their proposed bystander's report for the substitution of judge hearing. They contend that the completeness of the record was compromised when Judge Barrett denied certification of the proposed bystander's report. However, defendants have not demonstrated

why Judge Barrett denied certification of the proposed report or that he erred in rejecting defendants' request.

¶ 59 Judge Barrett issued a written ruling denying the motion for substitution of judge. In that order, Judge Barrett explained that, at the hearing, defendants "presented argument consistent with [their] petitions and offered no additional testimony or evidence other than what was contained in the supporting affidavits." As such, it seems clear that a bystander's report would not be helpful for resolving any questions about the substitution of judge hearing on appeal. Judge Barrett went on to explain in his order that defendants presented no credible evidence to prove prejudice or bias on the part of Judge Canellis. Instead, Judge Barrett found the evidence presented to not be credible. Defendants have failed to demonstrate that they are entitled to any relief stemming from the proceedings on their motion for substitution of judge for cause.

¶ 60                    10. Evidentiary Hearing on Service of Process Issue

¶ 61 Defendants argue that the trial court erred when it denied them an evidentiary hearing on the issue of whether plaintiff complied with the demand notice requirement under the Forcible Entry and Detainer Act (735 ILCS 5/9-101 *et seq.* (West 2024)). Upon a tenant's nonpayment of rent, if the landlord wishes to proceed with an eviction under the Act, the landlord must serve the tenant with a written demand for payment stating that unless payment is made within the time stated in the notice, which must be at least five days after the notice is served, the lease will be terminated. 735 ILCS 5/9-209 (West 2024). At the hearing on their motion to dismiss, defendants requested that the court hold an evidentiary hearing on the issue of whether the five-day notice was served on them. The trial court denied the request for an evidentiary hearing.

¶ 62 As stated above, the trial court allowed defendants to file an untimely motion to dismiss, even as the case was approaching trial. Then, when the motion to dismiss was heard and the trial

judge intended to rule on the motion, defendants insisted upon receiving an evidentiary hearing. The trial court indicated, based on the affidavits and other information in the record, that it found the notice of termination of tenancy was received by defendants. Indeed, in making his argument at the hearing, defendant Justin Mahwikizi asserted that his wife Lauren had never received the five-day notice, seeming to tacitly admit his receipt. Defendant Justin Mahwikizi also testified about the issue of their receipt of plaintiff's notice of intent to terminate the tenancy during trial. The jury heard the evidence and rejected it, instead finding that plaintiff was entitled to possession of the premises. Nevertheless, defendants were afforded the opportunity to argue and present evidence concerning their alleged nonreceipt of the demand to a factfinder.

¶ 63    Defendants admitted receiving the notice of termination in their answer, defenses and counterclaims. Defendants used the form answer, affirmative defenses, and counterclaims approved by the supreme court to respond to the complaint in this case. In section 2(a) of the form, defendants checked the box for the proposition: "Improper service of notice: The landlord did not give me notice in a lawful way." On that same form, there is a field, "No notice: The landlord says that I did not pay my rent or that I otherwise violated my lease, but I did not get a written notice from the landlord" – that box was not checked by defendants. Actual receipt of the notice of termination defeats any defects in service because "the object of notice is to inform the party notified, and if the information is obtained in any way other than formal notice, the object of notice is attained." *Vole, Inc. v. Georgacopoulos*, 181 Ill. App. 3d 1012, 1019 (1989). Defendants have failed to demonstrate that the trial court's denial of their oral motion for an evidentiary hearing warrants reversal of the judgment.

¶ 64                                        CONCLUSION

¶ 65    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 66    Affirmed.