# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2021AP463 |

| | |
|---|---|
| COMPLETE TITLE: | Colectivo Coffee Roasters, Inc., Tandem Restaurant, LLC d/b/a The Tandem, Wrecking Crew, Inc., Iron Grate BBQ Company, Inc., East Troy Brewery Company, Logan & Potter, Inc., Buckley's Kiskeam Inn, LLC, Other Ones MKE, LLC, BCT 5, LLC, Company Brewing, LLC, Bryhopper's Bar & Grill, LLC, The River's Bar, LLC, Etcetera by BLH, LLC, REMBS, LLC, KRO Bar, Inc., Rivermill, Inc. and Pork's Place of Kaukana, LLC, Plaintiffs-Respondents, v. Society Insurance, a Mutual Company, Defendant-Appellant. |

ON BYPASS FROM THE COURT OF APPEALS

| | |
|---|---|
| OPINION FILED: | June 1, 2022 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | April 12, 2022 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Milwaukee |
| JUDGE: | Laura Gramling Perez |

JUSTICES:

DALLET, J., delivered the majority opinion for a unanimous Court.

NOT PARTICIPATING:

ATTORNEYS:

For the defendant-appellant there were briefs filed in the court of appeals by *Janet E. Cain, Heidi L. Vogt, Beth J. Kushner, Christopher E. Avallone* and *von Briesen & Roper, S.C.,* Milwaukee. There was a brief filed in response to amicus briefs

for United Policyholders and the Tavern League of Wisconsin by *Janet E. Cain, Heidi L. Vogt, Beth J. Kushner, Christopher E. Avallone, Laura A. Foggan* and *von Briesen & Roper, S.C.,* Milwaukee and *Crowell & Moring LLP,* Washington D.C. There was an oral argument by *Laura A. Foggan.*

For the plaintiffs-respondents there was a brief filed in the court of appeals by *Jay A. Urban, Nicole A. Flemming, Richard W. Schulte* and *Urban & Taylor, S.C.,* Milwaukee and *Wright & Schulte,* Vandalia. There was an oral argument by *Jay A. Urban.*

An amicus curiae brief was filed in the court of appeals by *Jeffrey D. Colman, Gabriel K. Gillett* and *Jenner & Block LLP,* Chicago for The Restaurant Law Center.

An amicus curiae brief was filed by *Andrew B. Hebl* and *Boardman & Clark LLP,* Madison for the Wisconsin Insurance Alliance, American Property Casualty Insurance Association, and the National Association of Mutual Insurance Companies.

An amicus curiae brief was filed by *Patrick Murphy, John S. Vishneski III* and *Quarles & Brady LLP,* Milwaukee and *Reed Smith LLP,* Chicago for United Policyholders.

An amicus curiae brief was filed by *Patricia L. Jenness, Marshall Gilinsky, Esq., Nicholas M. Insua, Esq., Rhonda Orin, Esq.* and *Michael Best & Friederich LLP,* Milwaukee and *Anderson Kill,* New York City for the Tavern League of Wisconsin.

2

**2022 WI 36**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2021AP463
(L.C. No. 2020CV2597)

STATE OF WISCONSIN          :          IN SUPREME COURT

**Colectivo Coffee Roasters, Inc.; Tandem Restaurant, LLC d/b/a The Tandem; Wrecking Crew, Inc.; Iron Grate BBQ Company, Inc.; East Troy Brewery Company; Logan & Potter, Inc.; Buckley's Kiskeam Inn, LLC; Other Ones MKE, LLC; BCT 5, LLC; Company Brewing, LLC; Bryhopper's Bar & Grill, LLC; The River's Bar, LLC; Etcetera by BLH, LLC; REMBS, LLC, KRO Bar, Inc.; Rivermill, Inc.; and Pork's Place of Kaukauna, LLC,**

     **Plaintiffs-Respondents,**

    **v.**

**Society Insurance, a Mutual Company,**

     **Defendant-Appellant.**

**FILED**

**JUN 1, 2022**

Sheila T. Reiff
Clerk of Supreme Court

DALLET, J., delivered the majority opinion for a unanimous Court.

APPEAL from an order of the Circuit Court for Milwaukee County, Laura Gramling Perez, Judge. *Reversed and remanded*.

¶1  REBECCA FRANK DALLET, J.  Colectivo Coffee Roasters and other bars and restaurants experienced substantial losses as a result of the COVID-19 pandemic and related government

restrictions on in-person dining. This case is about whether those losses are covered by a property-insurance policy issued by Society Insurance. Specifically, the questions here are: (1) whether a bar or restaurant's inability to use its dining space for in-person dining because of the pandemic and related government restrictions constitutes a direct physical loss of or damage to its property under Society's policy; and (2) whether the presence of COVID-19 on a bar or restaurant's property caused the bar or restaurant to suspend its operations, thereby entitling it to coverage under the policy's contamination provision. We conclude that the answer to both questions is "No," and therefore reverse.

I

¶2 This case began in the early days of the COVID-19 pandemic. In early February 2020, Colectivo purchased an insurance policy from Society.[1] The policy provides that Society "will pay for direct physical loss of or damage to" Colectivo's buildings, permanently installed equipment, and other "business personal property." When such direct physical harm occurs, the policy covers not only that harm but certain other losses resulting from it. Two types of losses are relevant here, each

---

[1] Although several bars and restaurants are plaintiffs here, only Colectivo's policy is in the record. Throughout this litigation the parties have treated Colectivo's policy as representative of the other plaintiffs' policies. We do the same. We also refer to all plaintiffs collectively as "Colectivo."

covered by its own provision.  The first is the "business-income" provision, under which Society is required to pay for "the actual loss of business income [Colectivo] sustain[s] due to the necessary suspension of [its] 'operations' during the 'period of restoration.'"[2]  The second is the "extra-expenses" provision, which covers expenses incurred "during the period of restoration," that Colectivo would not have incurred but for the direct physical harm, and that are "necessary" to "avoid or minimize the suspension of business and to continue operations".

¶3  The policy also contains provisions that cover lost business income and extra expenses incurred as a result of contamination on the property or an order by a civil authority preventing Colectivo from accessing its property.[3]  The policy's

---

[2] "Operations" and "period of restoration" are defined in the policy.  "Operations" means "[the insured's] business activities occurring at the described premises."  "Period of restoration" means "the period of time that begins with the date of direct physical loss or damage caused by or resulting from a covered cause of loss . . . and ends on the date when the property . . . should be repaired, rebuilt or replaced with reasonable speed and similar quality."

[3] The policy uses "business income" and "extra expenses" both as titles for coverage provisions and as types of losses. When the contamination provision refers to business income and extra expenses, it does so only to identify types of losses: "The definitions of Business Income and Extra Expense, contained in the Business Income and Extra Expense Additional Coverages section shall also apply to the additional coverages under this section."  The policy defines lost "business income" as the "net income . . . that would have been earned or incurred if no physical loss or damage had occurred."  An "extra expense" is defined, in relevant part, as an "expense incurred to avoid or minimize the suspension of business and to continue operations."

"contamination" provision covers the costs to "clean and sanitize [Colectivo's] premises, machinery and equipment" when Colectivo's "operations are suspended due to 'contamination,'" defined as a "defect, deficiency, inadequacy or dangerous condition in [Colectivo's] products, merchandise, or premises." When the contamination "results in an action by a public health or other governmental authority that prohibits access" to the property and causes Colectivo to suspend its business operations, the policy covers lost business income and extra expenses Colectivo incurs during that suspension period. The "civil-authority" provision provides coverage when a "civil authority . . . prohibits access" to Colectivo's property due to direct physical harm to a surrounding property, even if Colectivo's property itself suffered no such harm.

¶4 Not long after Colectivo purchased its policy from Society, Department of Health Services Secretary-Designee Andrea Palm issued several emergency orders aimed at stopping the spread of COVID-19. Orders Nos. 5 and 12, issued in March 2020, prohibited in-person dining at all bars and restaurants, although take-out and delivery services were allowed to continue. Colectivo lost business income as a result of its compliance with those restrictions, and some of the other plaintiffs that served only alcohol closed altogether, as local laws prohibited them from offering take-out service. Colectivo filed a claim with Society to recover its lost income, which Society denied on the grounds that Colectivo had not suffered a "direct physical loss." Rather, in Society's view, Colectivo's

4

use of its property was restricted, but the property was not lost or damaged.

¶5 Colectivo then filed a class-action complaint against Society seeking declaratory and injunctive relief, as well as damages for breach of contract. It alleged that it had been "forced . . . to cease [its] operations" because of Palm's orders and the potential presence of COVID-19 on its property. Colectivo asserted that the "presence of any COVID-19 particles renders items of physical property unsafe," thereby causing "direct physical harm, direct physical damage, and direct physical loss to property." Accordingly, Colectivo argued that Society was required to compensate it for that harm as well as the business income it lost because of that harm. Likewise, it alleged that Palm's orders "prohibited the public from accessing [its] restaurants, thereby causing the necessary suspension of [its] operations," which triggered the business-income, extra-expense, and civil-authority provisions of the policy.

¶6 Society filed a motion to dismiss the complaint, arguing that Colectivo had failed to allege any direct physical loss of or damage to its property, so none of the policy's coverage provisions applied. The circuit court denied that motion, concluding that Colectivo had sufficiently alleged a physical loss of its dining area due to both the likely presence of COVID-19 on Colectivo's property and Palm's orders prohibiting in-person dining. The court of appeals permitted Society to appeal the circuit court's non-final order. Society

5

then filed a petition to bypass the court of appeals, which we granted.

## II

¶7 We review de novo the circuit court's denial of Society's motion to dismiss. See Data Key Partners v. Permira Advisers LLC, 2014 WI 86, ¶17, 356 Wis. 2d 665, 849 N.W.2d 693. We accept as true all well-pleaded facts in Colectivo's complaint, as well as reasonable inferences from those facts, but we draw our own legal conclusions regarding how they apply to the Society insurance policy. See id., ¶¶18-19.

¶8 The interpretation of an insurance policy is a question of law that we review de novo. Am. Fam. Mut. Ins. Co. v. Am. Girl, Inc., 2004 WI 2, ¶23, 268 Wis. 2d 16, 673 N.W.2d 65. Our goal is to give effect to the parties' intent, construing the policy as it would be understood by a reasonable person in the same position as the insured. Id. If, based on the facts in the complaint, "it is clear that the policy was not intended to cover the claim asserted, the analysis ends there." See id., ¶24. Only if the complaint establishes an initial grant of coverage do we analyze whether any exclusion provisions apply. See id.

## III

¶9 Colectivo asserts that Society must cover Colectivo's alleged damages under the policy's business-income, extra-

6

expense, civil-authority, and contamination provisions.[4] We analyze the former three provisions together because they share a similar prerequisite for coverage: they apply only if there has been a physical loss of or damage to either Colectivo's property or a surrounding property. We then address the contamination provision, which applies if a "dangerous condition" on Colectivo's property caused Colectivo to suspend its operations or a governmental authority to "prohibit access" to the property.

A

¶10 The provisions of Society's policy on which Colectivo relies, with the exception of the contamination provision, all require Colectivo to allege a direct physical loss of or damage to either its property or a surrounding property. Although Society's policy does not define "direct physical loss of or damage to" property, our prior cases interpreting similar language establish that physical losses and physical damages refer to different degrees of tangible harm. An insured suffers a physical "loss" of its property when the property is

---

[4] Colectivo also argues that it is entitled to coverage under the policy's "sue and labor" clause, which requires Colectivo to keep a record of its expenses related to a covered loss or damage and to take reasonable steps to prevent further damage. By its plain text, however, this provision does not provide coverage; it merely lays out certain obligations Colectivo has "in the event of loss or damage to covered property." See also In re Soc'y Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig., 521 F. Supp. 3d 729, 745 (N.D. Ill. 2021) (reaching the same conclusion).

"destroyed" or affected to such an extent that it cannot be repaired. See RTE Corp. v. Md. Cas. Co., 74 Wis. 2d 614, 624, 247 N.W.2d 171 (1976). Such a loss occurs, for example, when a building burns down and must be rebuilt. See, e.g., Park Terrace, LLC v. Transp. Ins. Co., No. 2010AP2432, unpublished op., ¶4 (Wis. Ct. App. Dec. 1, 2011). Physical "damage" is harm to the tangible characteristics of the insured property that does not rise to the level of a physical loss. See Wis. Label Corp. v. Northbrook Prop. & Cas. Ins. Co., 2000 WI 26, ¶¶29-31, 233 Wis. 2d 314, 607 N.W.2d 276; see also Sandy Point Dental, PC v. Cincinnati Ins. Co., 20 F.4th 327, 332 (7th Cir. 2021). So a roof that is dented by hail but remains functional has incurred physical damage because "[t]his denting changes [its] physical characteristics." Advance Cable Co., LLC v. Cincinnati Ins. Co., 788 F.3d 743, 747 (7th Cir. 2015). By contrast, a product that is merely mislabeled has suffered no physical damage because its tangible characteristics are unchanged. See Wis. Label Corp., 233 Wis. 2d 314, ¶¶31-33.

¶11 That definition of "direct physical loss of or damage to" property is consistent with how the phrase is used in Society's policy. See Day v. Allstate Indem. Co., 2011 WI 24, ¶28, 332 Wis. 2d 571, 798 N.W.2d 199 (insurance policy terms are interpreted "in the context of the policy as a whole"). The policy provides that business-income and extra-expense coverages are limited to losses resulting from a physical loss of or damage to the property that are incurred during the "period of restoration." The "period of restoration" is the time during

which the property is "repaired, rebuilt or replaced with reasonable speed and similar quality." Thus, for a harm to constitute a physical loss of or damage to the property, it must be one that requires the property to be repaired, rebuilt, or replaced——that is, it must alter the property's tangible characteristics. See, e.g., Sandy Point Dental, 20 F.4th at 333.

1

¶12 Colectivo argues that it suffered a physical loss of or damage to its property in two ways: (1) because of the "presence of COVID-19 particles" on its premises; and (2) it lost the use of at least some of its property because of Palm's orders closing restaurants. We reject both arguments because neither alleges a tangible harm to Colectivo's physical property necessary to trigger coverage.

¶13 As the overwhelming majority of the other courts that have addressed the same issue have concluded, the presence of COVID-19 does not constitute a physical loss of or damage to property because it does not "alter the appearance, shape, color, structure, or other material dimension of the property." See, e.g., Sandy Point Dental PC v. Cincinnati Ins. Co., 488 F. Supp. 3d 690, 693-94 (N.D. Ill. 2020) (collecting cases), aff'd, 20 F.4th 327 (7th Cir. 2021). The virus does not necessitate structural "repairs or remediation"; it can be removed from a surface with a disinfectant. See Uncork & Create LLC v. Cincinnati Ins. Co., 498 F. Supp. 3d 878, 883-84 (S.D. W.

9

Va. 2020), aff'd, 27 F.4th 926 (4th Cir. 2022). Likewise, COVID-19 does not render property "inherently dangerous" or "uninhabitable" in the same way as "ongoing rockfalls" or wildfire smoke might, because COVID-19 is not a "physical peril that ma[kes merely] entering a structure hazardous." See Biltrite Furniture, Inc. v. Ohio Sec. Ins. Co., No. 20-CV-656-JPS-JPS, 2021 WL 3056191, at *4 n.4 (E.D. Wis. July 20, 2021). Rather, the danger of the virus is to "people in close proximity to one another," not to the real property itself. Id.; see also Uncork & Create, 498 F. Supp. 3d at 884.

¶14 As for Palm's orders, although they restricted Colectivo's use of its property, Society's policy makes clear that a loss of use is distinct from physical loss of or damage to property. For instance, in a provision regarding personal property, the policy expressly covers damages for both the loss of or damage to that property as well as the loss of the use of that property: "We [Society] will pay . . . damages because of direct physical loss or damage, including loss of use, to [invitees' personal property] caused by accident and arising out of any covered cause of loss." By contrast, the policy provisions on which Colectivo relies omit any loss-of-use language, instead covering only a "direct physical loss of or damage to" the property. One may think of the business-income provision as indirect loss-of-use coverage, but that does not change the fact that a prerequisite for that provision is still a direct physical loss or damage. "Loss of use" is thus distinct from a "direct physical loss or damage," and

10

Colectivo's argument fails because it conflates the two. See, e.g., Green Beginnings, LLC v. W. Bend Ins. Co., No. 20-CV-1661, 2021 WL 2210116, at *5 (E.D. Wis. May 28, 2021) ("'Direct physical loss' does not include the temporary loss of use of the insured's property."), appeal filed, No. 21-2186 (7th Cir. June 25, 2021); Real Hosp., LLC v. Travelers Ins. Co. of Am., 499 F. Supp. 3d 288, 295-96 (S.D. Miss. 2020).

¶15 The federal district court case on which Colectivo primarily relies makes that same mistake, while also misinterpreting "period of restoration." See In re Soc'y Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig., 521 F. Supp. 3d 729 (N.D. Ill. 2021). That case involved similar plaintiffs who raised similar claims as in this case: they were restaurants and bars who could not offer in-person dining because of COVID-19-related government orders and who had filed insurance claims under the same Society policy. The district court concluded that a reasonable jury could find that the plaintiffs had suffered a "physical loss" under the policy because they were "limited from using much of their physical space." See id. at 742. It also rejected Society's argument that the definition of "period of restoration" precluded the plaintiffs' claims, explaining that the period of restoration defined only the timeframe for which business-income expenses would be covered. Additionally, the court noted that because a restaurant could "repair" its dining room by installing certain safety features or "replace" its "lost" dining space by expanding its dining room, the definition of "period of

11

restoration" was "consistent with interpreting direct physical loss of property to include the loss of physical use" of that property. See id. at 742-43.

¶16 We disagree with that reasoning for two reasons. First, the district court's interpretation ignores the language in Society's policy distinguishing a loss of use from a direct physical loss and is inconsistent with our previous cases interpreting "physical loss." And second, to restore property is to "bring [it] back to . . . [its] former or original state,"[5] not to alter its condition, as the district court's proposed measures would. So although Colectivo could not use its dining room for in-person dining for a period of time, the dining room was still there, unharmed——it was not physically lost or damaged. See Sandy Point Dental, 20 F.4th at 332-34. Without such a harm, the policy's business-income and extra-expense provisions do not apply. See 10E, LLC v. Travelers Indem. Co. of Conn., 483 F. Supp. 3d 828, 836 (C.D. Cal. 2020) ("Plaintiff only plausibly alleges that in-person dining restrictions interfered with the use or value of its property——not that the restrictions caused direct physical loss or damage.").

2

¶17 The civil-authority provision likewise does not apply. Unlike the business-income and extra-expense provisions, which require a physical loss of or damage to Colectivo's property,

---

[5] https://www.merriam-webster.com/dictionary/restore

the civil-authority provision requires a physical loss of or damage to someone else's. It also requires an "action of civil authority that prohibits access" to Colectivo's property because of the physical damage to the other property. Colectivo argues Palm's orders "caus[ed] the necessary suspension of [its] operations," thus "triggering" the civil-authority provision. Colectivo, however, has identified no other property in the "immediately surrounding" area that suffered a physical harm. See In re Soc'y Ins. Co., 521 F. Supp. 3d at 743–44. Plus, Palm's orders did not prohibit access to Colectivo's property. In fact, the orders explicitly allowed customers to access the property to order, pick up, and pay for Colectivo's food or drinks, provided that they stay six feet apart from others and did not use Colectivo's property for in-person dining.

¶18 Because Colectivo has identified no physical loss of or damage to its property or a surrounding property, the losses it alleges are not covered by the business-income, extra-expense, or civil-authority provisions.

B

¶19 We now turn to Colectivo's claim that it has coverage under the policy's contamination provision. The policy defines "contamination," in relevant part, as a "dangerous condition in your products, merchandise or premises." If the contamination causes Colectivo to suspend its operations and "results in an action by a public health or governmental authority that prohibits access to the [property] or production of

13

[Colectivo's] product," Society will pay for related business-income and extra-expense losses. Colectivo argues that it is entitled to coverage under this provision because the possible presence on its property of COVID-19 particles created a dangerous condition. It asserts that Palm's orders responded to that condition by barring access to its property, which prohibited the production of its product.

¶20 The contamination provision does not apply here for three reasons. First, as Colectivo concedes in its complaint, it did not suspend its operations due to the presence of COVID-19; it did so because of Palm's orders. Indeed, despite the continuing presence of the virus, in-person dining operations were no longer prohibited after the court invalidated Palm's orders.[6] Thus, assuming the presence of COVID-19 particles constitutes "contamination," that contamination did not cause Colectivo to suspend its operations, as the policy requires. Second, and as discussed above, Palm's orders did not prohibit access to Colectivo's property; they restricted how the property could be used. And third, Palm's orders did not prohibit Colectivo from producing its products; they prevented

---

[6] _See_ _Wis. Legis. v. Palm_, 2020 WI 42, 391 Wis. 2d 497, 942 N.W.2d 900.

14

it only from serving its products for in-person dining.[7] Accordingly, Colectivo has failed to sufficiently allege an initial grant of coverage under the contamination provision. See In re Soc'y Ins. Co., 521 F. Supp. 3d at 744-45.

IV

¶21 We conclude that Colectivo fails to state a claim for coverage under the Society policy's business-income, extra-expense, civil-authority, or contamination provisions. Accordingly, we do not address whether any of the policy's exclusion provisions apply. See Am. Fam. Mut. Ins. Co., 268 Wis. 2d 16, ¶24. We therefore reverse the circuit court's order and remand the cause with instructions to grant Society's motion to dismiss.

*By the Court.*—The circuit court's order is reversed, and the cause remanded.

---

[7] This third reason applies equally to the plaintiffs here that serve only alcohol and, at least at the beginning of the pandemic, did not have the option of serving their products via take-out or delivery. As Emergency Order No. 12 stated, so long as they were "permitted by state law and municipal ordinance," carryout sales of alcohol beverages could continue. And where such sales were prohibited by state law and municipal ordinance, it is those laws and ordinances that prohibited the plaintiffs from serving their product, not Palm's orders or COVID-19.