2023 IL App (1st) 220936-U

No. 1-22-0936

Order filed September 22, 2023

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| STATS LLC, | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| | ) | Cook County. |
| v. | ) | |
| | ) | No. 21 CH 00644 |
| THE CONTINENTAL INSURANCE COMPANY and | ) | |
| NATIONAL FIRE INSURANCE COMPANY OF | ) | Honorable |
| HARTFORD, | ) | Eve M. Reilly, |
| | ) | Judge Presiding. |
| Defendants-Appellees. | ) | |

_____

JUSTICE LYLE delivered the judgment of the court.
Justice Mikva and Justice Navarro concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We affirm the judgment of the circuit court granting defendants' motion to dismiss plaintiff's complaint where plaintiff's alleged business income losses and extra expenses resulting from the COVID-19 virus were not covered by the commercial insurance policies issued by defendants.

¶ 2    After plaintiff Stats LLC and its affiliates (collectively, "Stats Perform"), a provider of services and products created from the collection of sports statistical data, incurred income losses

and extra expenses following the outbreak of the COVID-19 pandemic, it sought coverage under its commercial property insurance policies issued by defendants, the Continental Insurance Company and National Fire Insurance Company of Hartford (hereinafter, "Continental and National Fire"). In its complaint, Stats Perform alleged that the COVID-19 pandemic resulted in the cancellation of thousands of sporting events worldwide and the losses it experienced as a result of these cancellations and the "damage" done to its dependent properties (the stadiums and arenas where these events were to take place) by the virus were covered under the broad insurance policies that it purchased from Continental and National Fire.

¶ 3    Continental and National Fire filed a motion to dismiss the complaint arguing that their policies did not provide coverage because the COVID-19 virus[1] particles did not cause "material alteration" to the insured properties. The circuit court agreed, finding that Stats Perform failed to allege any physical loss or damage to property that would bring its losses within the business income and extra expense coverage in the policies. The court therefore granted Continental and National Fire's motion to dismiss the complaint with prejudice.

¶ 4    On appeal, Stats Perform contends that the circuit court erred in granting the motion to dismiss where it stated a possible claim for coverage based on its alleged "physical loss" of property. Stats Perform maintains that the court ignored its well-pled allegations that the COVID-19 virus detrimentally alters property by damaging the air and surfaces at the dependent properties. Stats Perform asserts that Illinois law has held that noxious particles, like the COVID-19 virus particles, can cause damage to property, and the court erred in failing to consider the unique nature

---

[1]SARS-CoV-2 is the virus that causes the respiratory illness COVID-19. See *Firebirds International, LLC v. Zurich American Insurance Co.*, 2022 IL App (1st) 210558, ¶ 5. For simplicity, we will refer to this virus as COVID-19 or the COVID-19 virus.

of Stats Performs' business and the policies it purchased from Continental and National Fire in granting the motion to dismiss. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 5                                          I. BACKGROUND

¶ 6      In its complaint, Stats Perform alleged that it creates products and services using sports statistical data that it collects from thousands of sporting events that take place every year. Following the outbreak of COVID-19, many of these sporting events were cancelled or postponed, which caused Stats Perform to incur significant losses and expenses when it could not collect the resultant data it needed to create its products. Stats Perform alleged that when it sought coverage for these losses from Continental and National Fire, they performed only a "perfunctory" investigation and denied coverage based on the lack of "direct physical loss of or damage to property."

¶ 7      Stats Perform purchased two different policies from Continental and National Fire: a domestic policy and an international policy. Both policies ran from June 2019 through June 2020, and then were renewed from June 2020 through June 2021. The international policies provide "Time Element Coverage," which is coverage that applies for the loss of business income that Stats Perform sustains during the "period of restoration" due to the actual suspension or delay of operations and extra expense "caused by direct physical loss of or damage to property at a location." The international policies also provide "Dependent Property Time Element Coverage," which provides coverage for the loss of business income that Stats Perform sustains during the "period of restoration" due the actual suspension or delay of operations and extra expense "caused by direct physical loss of or damage to property at a dependent property." The "period of

restoration," as it is used in the policies, begins at the date of the physical loss of or damage to the property and ends when the property is "repaired, rebuilt, or replaced ***." "Extra expense[s]" are reasonable and necessary expenses that Stats Perform incurs that would not have been incurred if there had not been a direct physical loss of or damage to the property.

¶ 8    The domestic policies provided for substantially similar coverage as the international policies for Stats Perform's domestic operations. That is, it also provided coverage for Stats Perform's loss of business income and extra expense "caused by direct physical loss of or damage to property ***" at the dependent properties during the period of restoration. The domestic policies also contained an exclusion for damage caused by "microbes." The domestic policies define the term microbes to mean: "A. non-fungal microorganism; B. non-fungal, colony-form organism; C. virus; or D. bacteria." The international policies likewise have an exclusion for microbes. However, the international policies omit the terms virus and bacteria from the definition of microbe, defining it as "any non-fungal microorganism or nonfungal, colony-form organism."

¶ 9    Stats Perform contended that COVID-19 caused direct physical loss of and damage to its dependent properties sufficient to trigger coverage under the policies. Stats Perform alleged that COVID-19 virus particles spread through the air and settle on surfaces. Stats Perform maintained that the presence of COVID-19 on property "causes physical loss and physical damage by necessitating remedial measures to reduce or eliminate the presence of the coronavirus" and transforms the property "from one that is usable and safe into one that is unsatisfactory for use, uninhabitable, unfit for its intended function, and extremely dangerous and potentially deadly." Stats Perform asserted that "[m]any sports venues experienced direct physical loss or damage due to coronavirus."

¶ 10 Stats Perform contended that the COVID-19 pandemic resulted in the cancellation and postponement of thousands of sports events which cause it to incur significant losses and expenses. Specifically, Stats Perform identified the cancellation and postponement of Ligue 1, a French professional soccer league, matches, Major League Baseball games, and Women's Tennis Association matches, in addition to other sporting events both domestically and internationally.

¶ 11 Stats Perform maintained that Continental and National Fire failed to reasonably investigate its claim and wrongfully denied coverage. Continental and National Fire denied coverage finding that Stats Perform failed to claim that its operations were "suspended because of any direct physical loss of or damage to property" at the dependent properties. Continental and National Fire stated that its investigation revealed no evidence of any direct physical loss of or damage to property. Stats Perform maintained, however, that Continental and National Fire conducted no investigation of direct physical loss of or damage to property at any dependent property.

¶ 12 Stats Perform raised a claim for breach of contract arguing that COVID-19 caused it actual business income losses and forced it to incur additional expenses due to physical loss and damage, which is a risk covered by both the domestic and international policies. Stats Perform asserted that Continental and National Fire were contractually obligated to indemnify it for the full amount of its losses. Stats Perform also sought a declaratory judgment pursuant to section 2-701 of the Code of Civil Procedure (Code) (735 ILCS 5/2-701 (West 2020)), declaring that COVID-19 causes direct physical loss of or damage to property within the meaning of the policies, and further declaring that Stats Perform was entitled to coverage. Finally, Stats Perform raised a claim for attorney fees pursuant to section 155 of the of the Illinois Insurance Code (Insurance Code) (215

ILCS 5/155 (West 2020)) based on Continental and National Fire's failure to fully investigate Stats Perform's claim and their unjustified denial of coverage.

¶ 13    Continental and National Fire filed a motion to dismiss the complaint pursuant to section 2-615 of the Code. 735 ILCS 5/2-615 (West 2020). They asserted, *inter alia*, that Stats Perform failed to adequately allege that it suffered "direct physical loss of or damage to" its insured property because the complaint did not allege that the Covid-19 virus was actually present at the insured properties. Continental and National Fire maintained that Stats Perform's allegations were based on insinuations that persons infected with the virus might have been present on the dependent properties and that the possible presence of the virus constituted physical loss or damage to these properties. Continental and National Fire asserted that even if the complaint sufficiently alleged that the virus was present at the dependent properties, it failed to plausibly allege that the virus "tangibly and materially altered such property." They contended that "numerous" courts throughout the country have recognized that "the mere presence of the coronavirus does not constitute physical loss or damage to property because the virus can be eliminated by routine cleaning and disinfecting." Continental and National Fire also contended that the policies directly excluded coverage for loss or damage caused by "microbes," which included viruses.

¶ 14    In response, Stats Perform contended that the complaint alleged "direct physical loss of or damage to property" because "physical loss of" property includes the inability to use the property, even absent material alteration, due to a physical peril. Stats Perform maintained that the COVID-19 virus was a physical peril that rendered the dependent properties unable to be used. Stats Perform also asserted that the complaint contained detailed and specific allegations explaining that sports event organizers could not use the sports venues due to physical circumstances created by

COVID-19, which represented a physical loss of the property. Stats Perform maintained that the complaint alleged direct physical damage to property because the COVID-19 virus is a physical, tangible substance that damages the air and surfaces by attaching to them and physically changing their composition.

¶ 15    After oral argument on the motion to dismiss, but before any ruling was entered, Stats Perform moved for substitution of the judge. The case was reassigned to a new trial court judge who granted Continental and National Fire's motion to dismiss the complaint with prejudice. The trial court's order reflects that it entered its ruling after hearing oral argument on May 23, 2022; however there is no report of proceedings from said hearing in the record. The court dismissed Stats Perform complaint finding that it failed to allege a " 'physical loss of or damage to property' " that would bring its losses within the business income or extra expense coverage in the policies.

¶ 16    Stats Perform filed a timely notice of appeal following the circuit court's dismissal. We find that we have jurisdiction to consider the merits of this appeal pursuant to Illinois Supreme Court Rule 303(a) (eff. July 1, 2017).

¶ 17                                II. ANALYSIS

¶ 18    On appeal, Stats Perform contends that the circuit court erred in granting Continental and National Fire's motion to dismiss the complaint where it stated a possible claim for coverage based on its "physical loss" of property. Stats Perform maintains that because of the physical presence of the COVID-19 virus at the dependent properties, the sports event organizers were unable to use the properties for their intended purpose, which triggered coverage under the policies after Stats Perform incurred losses because of their inability to collect data from the events to create its services and products. Stats Perform also asserts that the circuit court erred in ignoring its well-

pled allegations that the COVID-19 virus detrimentally alters property by causing damage to the air and surfaces at the dependent properties.

¶ 19                                    A. Standard of Review

¶ 20    Continental and National Fire brought their motion to dismiss Stats Perform's complaint pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)). "A motion to dismiss under section 2–615 of the Code challenges the legal sufficiency of a complaint based on defects apparent on its face." *Jane Doe-3 v. McLean County Unit District No. 5 Board of Directors*, 2012 IL 112479, ¶ 15. The critical question in addressing a motion to dismiss under section 2-615 is whether the allegations in the complaint, construed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted. *Id.* ¶ 16. A cause of action should be dismissed pursuant to section 2-615 where it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). The plaintiff is not required to set forth evidence in the complaint, but it must allege sufficient facts to bring a claim within a legally recognized cause of action. *Id.* at 429-30. We review *de novo* an order granting a section 2-615 motion. *Id.* at 429.

¶ 21    In addition, the interpretation of an insurance policy is a legal question, which we review *de novo*. *Lee v. State Farm Fire and Casualty Company*, 2022 IL App (1st) 210105, ¶ 15. Under Illinois law, "the general rules governing the interpretation of other types of contracts also govern the interpretation of insurance policies." *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005). In interpreting the language of an insurance policy, "the court's primary objective is to ascertain and give effect to the intent of the parties to the contract" taking into account the policy as a whole. *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 292

(2001). "If the terms of the policy are clear and unambiguous, they must be given their plain and ordinary meaning." *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479 (1997). If, however, the terms of the policy are ambiguous and susceptible to more than one meaning, they will be strictly construed against the insurer who drafted the policy. *Id.* "However, this court 'will not strain to find ambiguity in an insurance policy where none exists.' " *Eljer*, 197 Ill. 2d at 293 (quoting *McKinney v. Allstate Insurance Co.*, 188 Ill. 2d 493, 497 (1999)).

¶ 22                                B. Physical Loss or Damage

¶ 23    Our court has addressed the issue of whether the presence of the COVID-19 virus causes "physical loss or damage to" property as that phrase is used in a commercial property insurance policy in two recently published cases.

¶ 24    In *ABW Development, LLC v. Continental Casualty Company*, 2022 IL App (1st) 210930, this court found that a medical imaging clinic was not entitled to coverage from its insurer based on losses that it allegedly suffered as a result of the COVID-19 pandemic. The plaintiff asserted that it was " 'likely' " that the COVID-19 virus was physically present on their premises and that, as a result, the plaintiff " 'sustained direct physical loss and damage to items of property and to their premises as a result of the presence of' " the virus. *Id.* ¶ 10.

> "It further alleged that the 'presence' of any particles from the COVID-19 virus 'render[ed]' the premises, and items of physical property, 'unsafe,' impairing their 'value, usefulness and/or normal function,' and causing 'direct physical harm or loss to property.' Plaintiff maintained that its operations had 'been suspended' due to the 'physical loss and damage' to its property and the premises and due to the 'orders issued by civil authorities, thereby causing an actual loss of income.' " *Id.*

The plaintiff sought, among other things, a declaration from the court that it sustained physical loss or damage as a result of the presence of the COVID-19 virus on its premises, and that the presence of COVID-19 on its premises was a covered loss under its commercial insurance policy. *Id.* ¶ 11.

¶ 25 The circuit court granted the defendant's motion to dismiss the complaint with prejudice finding that the plaintiff had failed to allege coverage under the business income and extra expense provisions of the policy because COVID-19 does not cause " 'direct physical loss of or damage to property.' " *Id.* ¶ 20. The court found that the virus merely lands of surfaces, but does not " 'penetrate' " them so that those surfaces can be easily cleaned or disinfected. *Id.*

¶ 26 On appeal, this court turned to our supreme court's ruling in *Eljer*, 197 Ill. 2d at 312 in order to define the term "physical" as it was used in "physical loss of or damage to property." *ABW Development*, 2022 IL App (1st) 210930, ¶ 29. This court credited the supreme court's definition that a "physical injury" requires " 'an alteration in appearance, shape, color, or in other material dimension.' " *Id.* The *ABW* court found that the policy at issue "unambiguously requires that the covered loss or damage be physical in nature, meaning that property has been "alter[ed] in appearance, shape, color or in other material dimension.' " *Id.* ¶ 30.

¶ 27 In examining the policy, the *ABW* court noted that it referred to a "period of restoration" when the property is "repaired, rebuilt, or replaced." *Id.* ¶ 31. The court reasoned that the policy's focus on "on repairing, rebuilding, or replacing property (or moving entirely to a new location), indicates that the 'loss' or 'damage' that gives rise to business income coverage has a physical nature that can be fixed or that the physical loss or damage is so extensive that it requires a complete move to a new location." *Id.* The court noted that numerous federal courts examining the

same or similar policy language, had likewise held that the terms direct physical loss or damage do not extend to mere loss of use of the premises, but require physical damage to the premises. *Id.* ¶¶ 31, 32.

¶ 28    The court found that the plaintiff had failed to adequately allege that the COVID-19 virus caused physical loss or damage to its property because "the mere presence of the virus on surfaces does not constitute 'physical loss of or damage to property' because COVID-19 does not physically alter the appearance, shape, color, structure, or other material dimension of the property." *Id.* ¶ 35. In so holding, the court relied on the Seventh Circuit's holding in *Sandy Point Dental, P.C. v. Cincinnati Insurance Company*:

> "Even if the virus was present and physically attached itself to [the plaintiff]'s premises, [the plaintiff] does not allege that the virus altered the physical structures to which it attached, and there is no reason to think that it could have done so. While the impact of the virus on the world over the last year and a half can hardly be overstated, its impact on physical property is inconsequential: deadly or not, it may be wiped off surfaces using ordinary cleaning materials, and it disintegrates on its own in a matter of days. We thus find no reversible error in the district court's denial of [the plaintiff]'s motion for leave to amend its complaint." (Internal quotation marks omitted.) *ABW*, 2022 IL App (1st) 210930, ¶ 35 (quoting *Sandy Point Dental, P.C. v. Cincinnati Insurance Company*, 20 F. 4th 327, 335 (7th Cir. 2021))

The *ABW* Court concluded that the plaintiff therefore was not entitled to coverage because it failed to allege physical alteration of its property that would bring its alleged losses within the coverage provided by the policy. *Id.* ¶ 36.

¶ 29    In reaching its conclusion, the *ABW* court cited with approval the second district's ruling in *Sweet Berry Café, Inc. v. Society Insurance, Inc.*, 2022 IL App (2d) 210088. There, as in the case at bar and in *ABW*, the plaintiff policyholder sought a declaration that its policy covered business income it lost and extra expenses it incurred due to "direct physical loss of or damage to" its property that it sustained as a result of the presence of the COVID-19 virus at its premises. *Id.* ¶¶ 1, 4. In affirming the trial court's dismissal of the complaint, the second district found that the plaintiff's insurance policy required "physical alteration or substantial dispossession," and not merely loss of use. *Id.* ¶ 39. The plaintiff asserted that the virus physically damaged tangible property by rendering it unusable because it adheres to surfaces, creating a dangerous property condition and " 'direct physical loss of or damage to' " the property. *Id.* ¶ 43. The court rejected this contention finding that the virus did not cause physical damage to the property because none of the property needed to be repaired or replaced. *Id.* Relying on *Sandy Point Dental*, the *Sweet Berry* Café court noted that the virus's presence could be easily remediated by routine cleaning and disinfecting or will die off on its own after a few days. *Id.* (citing *Sandy Point Dental, P.C.*, 20 F. 4th at 335). The court observed that the trial court could take judicial notice of the ease of cleaning the virus off surfaces, as it was a matter of common knowledge. *Id.* The court also noted the policy's reference to a period of restoration, which considered the time needed to repair, rebuild, or replace the property, supported its conclusion because that provision assumed physical alteration of the property, not mere loss of use. *Id.*

¶ 30    The court explicitly rejected the plaintiff's contention that "direct physical loss" includes loss of use. *Id.* ¶ 46. The court concluded that the plaintiff's loss of use of its premises, without

any physical alteration to the property was not sufficient to allege a " 'direct physical loss of or damage to' " its property sufficient to trigger coverage under the policy. *Id.* ¶ 55.

¶ 31    We observe that there are also numerous unpublished cases that have followed the reasoning of our published authority detailed above. See, *e.g.*, *Ragan Consulting Group LLC v. Continental Casualty Company*, 2023 IL App (1st) 220905-U, ¶ 23 ("Because Ragan failed to allege that the COVID-19 Virus or various government orders caused an alteration in appearance, shape, color or in other material dimension to its property, *i.e.*, a 'direct physical loss of or damage to property,' the allegations in Ragan's complaint are insufficient to establish that its alleged business income losses and necessary extra expenses were covered by the Business Income Coverage and Extra Expense Coverage provisions of its insurance policy."); *State & 9 Street Corporation v. Society Insurance,* 2022 IL App (1st) 211222-U, ¶ 36 ("As discussed in *Sweet Berry Café* and *Lee*, without an allegation of a change to the physical nature of the existing property, plaintiffs' allegations are insufficient to establish a physical loss. Furthermore, plaintiffs' complaint likewise failed to demonstrate a physical loss because they did not allege that the restaurants and taverns at issue needed to be physically repaired or replaced."); *Ortiz Eye Associates, P.C. v. Cincinnati Insurance, Inc.*, 2022 IL App (1st) 211312-U, ¶ 32 ("Plaintiff failed to plead any facts showing that the presence of the COVID-19 virus inside the described property caused any direct accidental physical loss or direct accidental physical damage thereto that altered its appearance, shape, color, structure or material dimension necessitating any repairs or requiring a move to a new location.").

¶ 32    In *MTDB Corporation v. American Auto Insurance Company*, 2022 IL App (1st) 210979-U, ¶ 2, the policyholder plaintiff contended that the circuit court erred in, *inter alia*, "interpreting

'direct physical loss or damage' to mean only losses resulting from physical alteration of MTDB's property" and in "deciding that MTDB's allegations that COVID-19 infested the surfaces and air of its property did not constitute physical alteration of the property." Relying on *ABW*, and this court's ruling in *Firebirds International, LLC v. Zurich American Insurance Company*, 2022 IL App (1st) 210558, this court found that in order to trigger coverage for a physical loss under the policy, the damage must be "an actual alteration to the appearance, shape, color, or other physical aspect of the property." *Id.* ¶ 21. The court found that the circuit court therefore did not err in finding that "direct physical loss or damage" requires physical alteration. *Id.*

¶ 33    The court also rejected the plaintiff's contention that the virus caused physical loss or damage to its property by infecting surfaces and air. *Id.* ¶ 22. The court acknowledged that the virus is composed of particles that land on surfaces and linger in the air, but the court found that this contact did not "rise to the level of a physical or structural alteration of the property." *Id.* The court noted that contamination by the COVID-19 virus can be remedied by routine cleaning or disinfecting without altering the appearance, shape, color, or other material aspect of the property. *Id.* Accordingly, the court concluded that "COVID-19 could not constitute a physical alteration of the property so as to trigger coverage under the policy." *Id.*

¶ 34    Thus, it is clear that under Illinois law, in order for a policyholder to trigger coverage under policy language requiring "physical loss of or damage to property" the policyholder must sufficiently allege facts to show some damage of a physical nature, such that the property has been altered in appearance, shape, color, or in other material dimension, such that the property needs to be repaired, rebuilt, or replaced. It is also clear that particles of the COVID-19 virus, because of their ephemeral and easily remediated nature, do not physically alter property. The contract

language in the policies at issue in the above-cited authority is substantially similar to the language in policies in the case at bar including that the coverage is triggered by "physical loss of or damage to property" and references to the "period of restoration," which includes the time needed to repair, rebuild, or replace the property. Stats Perform's allegations concerning COVID-19 causing physical damage to its property also closely mirror the allegations raised by the plaintiff policyholders in these cases. We therefore find this precedent dispositive of the issue before us.

¶ 35 Stats Perform nonetheless asks us to depart from this precedent because (1) the policyholder plaintiffs in these cases did not allege "enough" to show that COVID-19 was present on their property and that it caused physical loss or damage to the property and (2) the circumstances of this case, including the policy language at issue, present unique considerations not present in *ABW*, *Sweet Berry Café*, and the other authority cited above. Stats Perform points out, for instance, that the plaintiff in *ABW* merely alleged that it was "likely" that the virus was present on its premises and the court affirmed the dismissal of the complaint in part on that basis. In contrast, Stats Perform unequivocally alleged that the virus was present at certain dependent properties.

¶ 36 First, we note that although Stats Perform is correct that the plaintiff in *ABW* alleged that the virus was only "likely" present on their property, the same ambiguous allegations were not present in other cases. For example, in *Sweet Berry Café*, the court specifically acknowledged that because of the standard of review on a section 2-615 motion to dismiss, it had to accept as true that the virus was on the plaintiff's premises. *Sweet Berry Café*, 2022 IL App (2d) 210088, ¶ 43. Even accounting for the unquestioned presence of virus, the *Sweet Berry Café* court nevertheless found that the presence of the virus did not cause "direct physical loss of or damage to" the property. *Id.*

Moreover, the *ABW* court specifically found that "*even assuming the COVID-19 virus was present at the premises*, the mere presence of the virus on surfaces does not constitute 'physical loss of or damage to property' because COVID-19 does not physically alter the appearance, shape, color, structure, or other material dimension of the property." (Emphasis added.) *ABW*, 2022 IL App (1st) 210930, ¶ 35. Accordingly, it is not the plaintiff's failure to specifically allege that the virus was present on the insured premises that is fatal to their claims, it is the fact that this court has repeatedly reiterated that the virus, by its very nature, cannot cause physical loss of or damage to property merely by its presence in the air and on surfaces.[2]

¶ 37    We also find that the circumstances in this case are not sufficiently distinct to warrant a different result than the one reached in similar cases. Stats Perform maintains that although several decisions of this court have cited the Seventh Circuit's holding in *Sandy Point Dental* for the proposition that COVID-19 may be easily cleaned off of surfaces, those cases did not involve large arenas and stadiums that would require industrial-scale cleaning efforts. The Seventh Circuit in *Sandy Point Dental*, however, did not find that COVID-19 does not cause physical loss of or damage to property merely because it can be easily cleaned, but discussed its temporary character as illustrative of the fact that it does not materially alter surfaces. See *supra* ¶ 27 (quoting *Sandy Point Dental*, 20 F. 4th at 335) Thus, the scale of cleaning required to remove the virus from the

---

[2]In an apparent effort to allege "enough" to show physical loss or damage, Stats Perform dedicates multiple pages of its briefs to discussion of the virus' chemical properties and the reactions that take place when the virus lands on surfaces. However, "the question is how an ordinary reader or policyholder, not a scientist, would understand the term as used in the policy. Courts are not to adopt 'an interpretation which rests on 'gossamer distinctions' that the average person, for whom the policy is written, cannot be expected to understand.' " *Crescent Plaza Hotel Owner v. Zurich American Insurance Co.*, 20 F. 4th 303, 309-10 (7th Cir. 2021) (quoting *Founders Insurance Co. v. Monoz*, 237 Ill. 2d 424, 433 (2010). In any event, is it well-established that whatever chemical reactions occur when particles of the virus land on surfaces, it does not materially alter the property.

property is irrelevant, particularly where, as the Seventh Circuit noted in *Sandy Point Dental*, the virus "disintegrates on its own in a matter of days." *Id.* Therefore, the key takeaway from *Sandy Point Dental*, which this court has repeatedly endorsed, is that even if the virus alights on surfaces, it does not cause material alteration to the property, and its temporary nature means that it can be removed from those surfaces without altering the appearance, shape, color, or other material aspect of the property. See *MTDB*, 2022 IL App (1st) 210979-U, ¶ 22.

¶ 38    Stats Perform also contends that the policies in this case differ from those in other cases because the domestic policies contained an exclusion for "microbes" that specifically included "virus[es]," but the international policies' "microbe" exclusion did not include viruses. However, "[a]n exclusion in an insurance policy is a provision that eliminates coverage *that would have existed in the absence of the exclusion*." (Emphasis added.) *Wells v. State Farm Fire & Casualty Insurance Company*, 2021 IL App (5th) 190460, ¶ 27. In this case, Stats Perform was not entitled to coverage even in the absence of the exclusion because they failed to allege physical loss of or damage to property. Therefore, the international policies' failure to specifically include "virus" in the definition of "microbe" is of no import here. See *Sweet Berry Café*, 2022 IL App (2d), ¶ 47 ("Unless the policy already granted coverage, which it does not do, a virus exclusion was not necessary.").

¶ 39    We also reject Stats Perform's contentions that liken COVID-19 to other causes of loss like asbestos fibers or noxious gases. The second district considered and rejected a similar argument in *Sweet Berry Café*, finding that the presence of those substances rendered the premises unusable. *Id.* ¶ 43. The *Sweet Berry Café* court cited *Sandy Point Dental*, which distinguished "gas cases" on the basis that the contamination barred " 'all uses by all persons,' whereas the COVID-19 virus

only partially limited the plaintiffs' preferred use of their premises." *Id.* (quoting *Sandy Point Dental*, 20 F. 4th at 334). The seventh circuit in *Sandy Point Dental* explained that in the noxious gas cases cited by the plaintiff, "the gas infiltration *** led to more than a diminished ability to use the property. It was so severe that it led to complete dispossession—something easily characterized as a " 'direct physical loss.' " *Sandy Point Dental*, 20 F. 4th at 334. The Seventh Circuit also distinguished asbestos fiber cases, relying on our supreme court's decision in *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64 (1991). *Id.* at 333. The *Wilkin Insulation* court explained that "asbestos fiber contamination constitutes physical injury to tangible property, *i.e.,* the buildings and their contents" because the fibers damage the buildings to the extent where " 'corrective action, under the law, must be taken' " to remediate the damage. *Wilkin Insulation*, 144 Ill. 2d at 76 (quoting *Board of Education v. A.C. & S, Inc.*, 131 Ill. 2d 428, 449 (1989)). Here, there is no law compelling corrective action to remove the COVID-19 virus from the property.

¶ 40 Finally, Stats Perform urges this court to rely on out-of-state and federal district court cases that it maintains support its position here. We observe that Stats Perform has identified only one case applying Illinois law, *In re Society Insurance Co. COVID-19 Business Interruption Protection Insurance Litigation*, 521 F. Supp. 3d 729 (N.D. Ill. 2021). In that case, the district court denied the defendant insurance company's motion for summary judgment finding that the plaintiffs could plead "direct physical loss" by pleading only "loss of use" and did not need to show a change to the property's physical characteristics. *Id.* at 739-43. The court held that the "disjunctive 'or' " in " 'direct physical loss or damage to covered property' " must indicate that "physical loss" means something different from " 'physical damage.' " *Id.* at 741.

¶ 41    First, we observe that this court is not bound by the decisions of United States district courts. See *City of Chicago v. Groffman*, 68 Ill. 2d 112, 118 (1977) (noting "[t]he general rule is that decisions of United States district and circuit courts are not binding upon Illinois courts"). Instead, we choose to conduct our own review of the allegations and the policies at issue and apply established Illinois precedent. See *Firebirds International*, 2022 IL App (1st) 210558, ¶ 21.

¶ 42    We also observe that numerous other cases reviewing the decision in *In re Society Insurance* have termed it an "outlier" that contradicts established precedent. See, *e.g.*, *Menominee Indian Tribe of Wisconsin v. Lexington Insurance Company*, 556 F. Supp. 3d 1084, 1097-98 (N.D. Cal. 2021); *Colectivo Coffee Roasters, Inc. v. Society Insurance*, 2022 WI 36, ¶¶ 15-16; *Town & Kitchen LLC v. Certain Underwriters at Lloyd's, London*, 522 F. Supp. 3d 1216, 1223 (S.D. Fla. 2021). Indeed, this court has expressly declined to follow *In re Society Insurance* finding that it "ignore[s] the unambiguous, plain, and ordinary meaning of 'direct physical loss' and do[es] not read the policies as a whole ***." *Sweet Berry Café*, 2022 IL App (2d) 210088, ¶ 53; see also *ABW*, 2022 IL App (1st) 210930, ¶ 34 ("We disagree with [*In re Society Insurance*] and observe that since [it was] decided, corresponding federal appellate courts in the same circuits have spoken to the contrary."); *Ark Restaurants Corporation v. Zurich American Insurance Company*, 2022 IL App (1st) 211147-U, ¶ 27 (noting that the Seventh Circuit rejected the reasoning of *In re Society Insurance* in *Sandy Point Dental* when it ruled, " 'Without a physical alteration to property, there would be nothing to repair, rebuild, or replace.' " (quoting *Sandy Point Dental*, 20 F. 4th at 333)). We likewise decline to follow the reasoning of *In re Society Insurance*.[3]

---

[3]We observe that Stats Perform cites another out-of-state federal district court case, *Studio 417, Inc. v. Cincinnati Insurance Co.*, 478 F. Supp. 3d 794 (W.D. Mo. 2020). In that case, the district court, applying Missouri law, denied the defendant insurance company's motion to dismiss the complaint finding that the plaintiffs had adequately alleged "direct physical loss" where the plaintiffs alleged that

¶ 43 We also observe that the vast majority of authority from federal and out-of-state jurisdictions examining similar policy language and similar circumstances reached the same conclusion as we reach here. See *ABW*, 2022 IL App (1st) 210930, ¶ 32 (collecting federal court authority that holds that the presence of the COVID-19 virus on the premises does not cause physical damage or material alteration to the property); *Sweet Berry Café*, 2022 IL App (2d) 210088, ¶ 48-49 (same). In the months since briefing was completed on this case, our research has revealed dozens of federal and state court cases from nearly every jurisdiction finding that the presence of COVID-19 particles does not constitute physical loss or damage as those terms are used in commercial insurance contracts. See, *e.g.*, *Cinemark Holdings, Inc. v. Factory Mutual Insurance Company*, 2023 WL 2588548 * 10 (E.D. Tex. 2023) ("The ordinary and generally accepted meaning of 'physical loss or damage' and the weight of binding precedent compel the same answer to this question—COVID-19 is a virus that has a profound effect on people, but it does not cause 'physical harm or damage' to property as a matter of both law and common sense."); *Cajun Conti LLC v. Certain Underwriters at Lloyd's, London*, 359 So. 3d 922, 926-27 (La. 2023) ("We find the plain, ordinary and generally prevailing meaning of 'direct physical loss of or damage to property' requires the insured's property sustain a physical, meaning tangible or corporeal, loss or damage. The loss or damage must also be direct, not indirect. Applying these meanings to the facts and arguments presented, COVID-19 did not cause direct physical loss of or damage to Oceana's property."); *K.C. Hopps, Ltd. v. Cincinnati Insurance Company, Inc.*, 2023 WL 5341496, * 2 (8th Cir. 2023) ("While contamination can be a direct physical loss, [citation],

the COVID-19 virus attached to surfaces at their property and rendered them unsafe for use. *Id.* at 800-803. This court, however, has declined to follow the ruling in Studio 417 for the same reasons that it has declined to follow *In re Society Insurance*. *Sweet Berry Café*, 2022 IL App (2d) 210088, ¶ 53; *ABW*, 2022 IL App (1st) 210930, ¶ 34.

SARS-CoV-2 is [not] the kind of contaminant that results in a direct physical loss, [citation]. Rather, although SARS-CoV-2 may have a physical element, it does not have a physical effect on real or personal property. [citation]. So even if K.C. Hopps had discovered COVID-19 at its properties, it could not meet the standard for physicality.") (Internal quotation marks omitted.)

¶ 44    These decisions weigh against Stats Perform's citations to amicus briefs in other, out-of-state, cases, which they argue demonstrate that the scientific community disagrees with Seventh Circuit's ruling in *Sandy Point Dental* that the virus can be removed by routine cleaning and disinfecting. We therefore find those arguments unpersuasive.

¶ 45    Finally, we affirm the dismissal of Stats Perform's count for bad faith denial of coverage under section 155 of the Insurance Code, because where no coverage is owed under the policy, there can be no finding that the insurance company acted vexatiously or unreasonably with respect to that claim. *Lee*, 2022 IL App (1st) 210105, ¶ 23; *ABW*, 2022 IL App (1st) 210930, ¶ 41.

¶ 46                                III. CONCLUSION

¶ 47    For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 48    Affirmed.